ROGGE, APPELLANT, v. PETROLEUM COUNTY ET AL., RESPONDENTS.

(No. 7,788.)

(Submitted May 9, 1938. Decided May 31, 1938.)

[80 Pac. (2d) 380.]

38

*Mr. Raymond E. Dockery* and *Mr. H. Leonard DeKalb,* for Appellant, submitted a brief, and argued the cause orally.

40

*Mr. Nick Langshausen, Mr. William A. Brown* and *Mr. John G. Brown,* for Respondent, submitted a brief, and argued the cause orally.

42

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, as a resident taxpayer of Petroleum county, brought this action in his own behalf and on behalf of all other taxpayers of the county to enjoin the collection of a tax levy of twenty mills for a bond sinking and interest fund. His claim is that the tax levy was and is illegal.

Upon the filing of the complaint, an order to show cause and restraining order was issued. Defendants thereafter filed a motion to quash the restraining order, and an answer to the complaint. The cause was heard before the court without a jury. The court dissolved the restraining order and entered judgment in favor of defendants for the dismissal of the action. This appeal is from the order dissolving the restraining order and from the judgment in favor of defendants.

From admissions in the pleadings, a stipulation entered into at the trial or undisputed evidence, the following facts are made to appear: Petroleum county has outstanding bonds in the sum of $86,000 of an issue of $185,000 executed in 1926 and maturing in 1945; they were made payable over a period of years at the rate of $9,000 per year, with the exception of the last five years, when $10,000 thereof were made payable each year; all payments on principal and interest to the date of the filing of the complaint had been made; for the fiscal year commencing July 1, 1937, and ending July 1, 1938, and for the further period to November 30, 1938, the requirements for principal were $9,000 and $5,160 on interest. At the time of the levy for that fiscal year, which is the one involved here, there was on hand in the bond sinking fund $8,622.80, and in the bond interest sinking fund $13,396. While the county apparently kept the bond sinking fund separate and apart from the bond interest sinking fund, there is in fact but one fund known as the sinking and interest fund. (Sec. 4630.27.) A

twenty-mill levy upon the county valuation will produce $19,647, if collected.

It is the contention of plaintiff that, since the county had on hand in the bond sinking and interest fund the sum of $22,019.76, and since the only requirements from the fund for the fiscal year in question for principal and interest was $14,160, a levy of taxes to raise money for that fund for that fiscal year was illegal and unauthorized.

The general rule governing this question is stated in 61 C. J. 557, as follows: "It is against the policy of the law to raise taxes faster than the money is likely to be needed by the government, and, in the absence of statutory authority, a tax cannot be levied for the sole purpose of accumulating funds in the public treasury, such as for remote or future contingencies that may never occur; nor can it be levied in excess of the amount required for the purpose for which it is levied, with the intention of using the excess for another purpose." Again it is stated in 44 C. J. 1288: "A tax for a sinking fund in excess of the amount needed for such purpose in any one year is invalid as to the excess."

Of course, it does not follow that the county commissioners have no discretion in determining the rate of taxation which, in their judgment, is necessary to produce the required revenue needed for any fiscal year. In other words, they are not obliged to do the impossible, that is, levy such a rate of taxation that will produce exactly enough money for the various needs of the county, and no more.

The test usually applied in determining whether a levy is excessive, is whether it is so grossly excessive as to constitute a constructive fraud upon the taxpayers. (*State ex rel. Johnson* v. *St. Louis-San Francisco Ry. Co.*, 315 Mo. 430, 286 S. W. 360; *People ex rel. Browne* v. *Chicago & E. I. Ry. Co.*, 306 Ill. 402, 138 N. E. 127.)

Our statute, section 4630.24, in part provides: "Whenever any county has any issue or series of bonds outstanding and there is not sufficient funds on hand available for the payment of the full amount of the interest and principal thereof,

the county treasurer of such county shall * * * each year * * * make out and deliver to the board of county commissioners * * * a statement showing the amount required to be raised by tax levy during the then current fiscal year for payment of interest and principal becoming due and payable during such fiscal year * * * on each issue or series of bonds outstanding.'' That the board of county commissioners in preparing its budget and making its levy must take into consideration the amount of money already available in each fund for which a levy is made, is made plain by sections 4613.1, 4613.2 and 4613.4. In other words, these sections declare the policy in Montana to be in favor of counties levying taxes as needed.

The supreme court of Oklahoma, in *El Reno Wholesale Co.* v. *Taylor*, 87 Okl. 140, 209 Pac. 749, declared the policy which has application under our statutes. The court said: ''The clear purpose of the law is that if the expenses of state government should have been less than was expended during the preceding year, and the amount of revenue collected during such year were greater than was expected, thereby leaving a cash balance in the treasury over and above all legal requirements and outstanding indebtedness, such cash balance should serve toward lessening the burden of the taxpayer for the ensuing year, otherwise the very condition would be brought about which plaintiff claims was intended to be brought about by the Board of Equalization, namely, the creation of a large surplus fund for the purpose of exploitation. The proposition is too simple to need further discussion. In our opinion the Board of Equalization, not only had authority to include the surplus cash on hands, but it was its duty, under the law, to do so in order thereby that the rate upon the taxpayer would be lessened for the ensuing year.'' To the same effect are *St. Louis-S. F. Ry. Co.* v. *Forbess*, 111 Okl. 48, 237 Pac. 596, *People* v. *Millard*, 307 Ill. 556, 139 N. E. 113, *In re Protest of Chicago, R. I. & P. Ry. Co.*, 143 Okl. 161, 288 Pac. 337, and *Texas Empire Pipe Line Co.* v. *Excise Board*, 165 Okl. 90, 24 Pac. (2d) 988.

Since, in the instant case, there was more money in the sinking and interest fund than needed for the fiscal year in question, the board was without authority to make any levy for the purpose of raising money for that fund.

Defendants contend that they had the authority to make the levy in order to have funds available with which to buy outstanding bonds at a discount and thus make a saving to the taxpayers. The evidence shows without conflict that such bonds are available for purchase by the county at a discount. Our research has found but one case that discussed this question. That is the case of *State ex rel. Johnson* v. *St. Louis-San Francisco Ry. Co.*, supra. After stating that "exactions from the people, as taxes or otherwise, in advance of any needs of the government are not only condemned by sound public policy but are violative as well of fundamental rights guaranteed by our organic law. The county court of Cass county was therefore without power to levy a tax clearly in excess of what could at the time have been reasonably anticipated as necessary to pay the interest and principal of the funding bonds," the court went on and upheld the levy because of the discretion in the board to raise money with which to buy the bonds at a discount. On this point it said: "Respondent argues that the levy was excessive because only $30,000 of the bonds had been called and the remainder were not due for eight years thereafter, and not even payable at the county's option for more than three years after that time. But the bonds had to be paid some time. If they could be bought up before maturity at such prices that the taxpayers would thereby be entirely relieved of further interest payments, why should it not be done? Private interests in the exercise of sound business judgment frequently follow that course with respect to their own bonded obligations. It certainly cannot be said that the county court, in employing in the county's business a method that has long obtained in the industrial and commercial world, abused the discretion with which it was invested."

We are not impressed with the reasoning upon which the court rested its conclusion in that case. Private interests do ▮ as they please with their own funds. County commis-

sioners have only such authority with reference to tax matters as the legislature sees fit to give them. (*State ex rel. Tillman* v. *District Court,* 101 Mont. 176, 53 Pac. (2d) 107, 103 A. L. R. 376.) There is no express authority on the part of the board to levy taxes to raise funds with which to buy the county bonds before they mature. Implied authority to do so cannot be said to exist because in so holding we would, in effect, be declaring that a bond issue extending over a period of twenty years, in the discretion of the board might be retired in a lesser time over the protests of the taxpayers. Such a holding would in effect change the obligation of the taxpayers who assumed the bonded indebtedness on the understanding that they would not be called upon to meet the obligations until they matured according to their terms.

Defendants also contend that plaintiff's remedy was to pay the tax under protest and then bring an action to recover it. This is not the exclusive remedy where, as here, the levy is illegal. (*First Nat. Bank* v. *Sanders County,* 85 Mont. 450, 279 Pac. 247; sec. 2268, Rev. Codes.)

Defendants further contend that plaintiff is estopped from maintaining this action because he did not appear before the board at the time the preliminary budget was noticed for hearing under section 4613.3 and make protest. Had there been discretion in the board to make some levy for the purpose involved here and were the only point involved that of the excessiveness of the levy, there might be merit in defendants' contention. We do not decide that point. Under the facts here the board had no authority or discretion to make any levy for the purpose for which the 20-mill levy was made. Such being the case, plaintiff was not estopped from questioning the validity, as distinguished from the excessiveness, of the purported levy.

The judgment and order are reversed and the cause is remanded with direction to enter judgment in favor of plaintiff as prayed for.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.