390 P.2d 960

**IDAHO POWER COMPANY, Plaintiff-Respondent,**

v.

**THREE CREEK GOOD ROADS DISTRICT, a political subdivision of the State of Idaho, and Noy Brackett, Ray Blick and Mearl Row, Commissioners of Three Creek Good Roads District, Defendants-Appellants.**

No. 9182.

Supreme Court of Idaho.

April 2, 1964.

110

Anderson, Kaufman & Anderson, Boise, for appellants.

James E. Bruce, Boise, for respondent.

KNUDSON, Chief Justice.

The appellant Three Creek Good Roads District (hereinafter referred to as "District") was created and organized by order of the Board of County Commissioners of Owyhee County, Idaho, on August 13, 1926. The area comprising the district is located in the southeast part of Owyhee County and extends approximately 35 miles from north to south and 24 miles from east to west.

Respondent, Idaho Power Company, is a public utilities corporation engaged in intrastate and interstate generation, transmission and distribution of electrical power through portions of Idaho, Nevada and Oregon. Within said district respondent company owns and operates approximately 27 miles of transmission line and 13 miles of distribution lines.

During the year 1959 there were 42 taxpayers, including respondent, within the district. The assessed valuation of the taxable property in the district during 1959 was $1,550,947, of which amount $1,324,434 was the assessed valuation of respondent's property, much of which was attributable to the allocation to its transmission lines of assessed valuation of its dam and power plant situate outside the boundaries of the district.

In the year 1959, and pursuant to plans of the district to improve and blacktop 7.8 miles of a road within the district known as the "Three Creek Road" extending from the east boundary of the district westerly to the Three Creek Store, the district levied and certified to the Board of County Commissioners of Owyhee County a levy of $1.16 per $100 of assessed valuation to provide moneys for the following items:

| | | |
|---|---|---|
| Expenditures to November 1, 1959 | | $ 3,258.00 |
| Estimated Expenditures November 1, 1959 to December 31, 1959: | | |
| Cost of Survey | $ 8,800.00 | |
| Deposit—Test Soil | 1,000.00 | |
| Culvert | 700.00 | |
| Miscellaneous Expenses | 700.00 | |
| Backhoe Rental | 500.00 | |
| Equipment Repairs | 500.00 | |
| Repairs on N E road | 800.00 | |
| Incidental Expenses | 1,000.00 | |
| Withheld Taxes—P R | 200.00 | |
| | $14,200.00 | |
| TOTAL | | $17,458.00 |

It is stipulated by the parties that the items

Cost of Survey $8,800.00
Deposit—Test Soil $1,000.00

were for the improvement of said 7.8 miles of road preparatory to the blacktopping thereof.

Said levy of $1.16 per $100 of assessed valuation was extended on the tax rolls

of Owyhee County and resulted in a tax levy upon respondent's property within the district in the amount of $15,363.43, which respondent paid under protest. $8,523.02 of said levy was attributable to the two items last above mentioned, to prepare said 7.8 miles of road for oil mat, and such sum was disbursed and distributed by the county treasurer to appellant district.

Respondent commenced this action to recover from appellant that portion of its tax payment which was levied and collected to pay for the cost of surveying and testing preparatory to blacktopping said 7.8 miles of roadway and to enjoin and restrain the district from making or certifying any future levy for such purpose. Two principal contentions were presented by respondent, to-wit:

(1) That the levy and assessment of taxes by the district to prepare the road for blacktopping, and for blacktopping, are contrary to the provisions of I.C. § 40–1506 (as it existed during 1959) and therefore illegal and void;

(2) That the tax levy for blacktopping the 7.8 miles of road constituted an arbitrary, discriminatory and confiscatory levy against the property of respondent, contrary to the provisions of Section 1 of the Fourteenth Amendment to the Constitution of the United States and contrary to the provisions of Article 1 Section 13 of the Constitution of the State of Idaho.

Appellant filed its answer to respondent's complaint and thereafter the cause was submitted to the trial court upon an agreed stipulation of facts.

Upon such stipulated facts the trial court concluded that the tax levy complained of did not constitute a discriminatory and arbitrary levy against respondent and did not violate the due process provisions of the Constitution of the United States or the Constitution of the State of Idaho. However, the trial court did conclude that the applicable statutes of this state did not authorize the district to make unrestrained tax levies for "extensive" or "major" improvements such as oiling or blacktopping roads within the district; that the portion of the tax levy by the district for the year 1959 for such purpose was void and respondent was entitled to judgment in the amount of $8,523.02. The court further ordered that the appellant be restrained and enjoined from making any future levies for the purposes of oiling or blacktopping a road within the district. Judgment was entered accordingly and this appeal is taken from such judgment.

One of the principal issues to be resolved is whether or not the levy by the commissioners of the district for the purpose of preparing the Three Creek Road for blacktopping, was authorized under the laws of this state existing at the time of such levy.

■ It is fundamental that the levy and collection of the tax here challenged must be accomplished pursuant to legislative au-

thority. It is stated in 84 C.J.S. Taxation § 7, p. 51, that:

"The taxing power of the state is exclusively a legislative function, and taxes can be imposed only in pursuance of legislative authority, although the general charge, control, and conduct of taxation are an executive function. In other words, the power to tax must be drawn from express statutory authority, there being no such thing as taxation by implication, and the legislative authority must be positive and not negative in nature. All doubts will be resolved against the taxing power."

Kelsey v. Taft (1953), 72 Wyo. 210, 263 P.2d 135; Board of County Commissioners of Montgomery County v. Allen (1953), 175 Kan. 460, 264 P.2d 916. In State ex rel. Hoover v. County of Minidoka, 50 Idaho 419, 298 P. 366, this court stated:

"All the decisions recognize that the power of taxation is a sovereign power delegatory to local taxing districts to raise funds for one public purpose or another, but always in behalf of sovereignty for the public good."

In Ripley v. Trinity River Canal and Conservancy Dist. (Tex.Civ.App.), 88 S.W. 2d 752, the court had under consideration the authority of the defendant district, which was created by an act of the legislature, to levy a tax against the property owners of the district. In reviewing the authority of the defendant to levy a tax, the court said:

* * * "A political subdivision of a state, such as the district in question, has no inherent power to levy taxes, and if the power exists at all, it must be expressly granted. Local taxation involves two distinct acts of legislation: (1) That by the State Legislature conferring the power to tax (absent in the instant case), and (2) that by the local body levying the tax under the authority previously given."

The power of a political subdivision to levy taxes must not only be expressly and distinctly granted, but it must also be exercised in strict conformity with the terms of the grant. In Tobias v. State Tax Commission, 85 Idaho 250, 378 P.2d 628, this court held that "The procedure prescribed by the legislature in respect to levying, assessing and collecting taxes must be strictly observed."

The only statutory authority for the Board of Good Roads Commissioners to cause a tax levy to be made for any purpose, in force at the time appellants levied the tax here in question, was contained in I.C. § 40–1506, which provides:

"It shall be the duty of the boards of good road commissioners to provide for a tax levy each year, within their respective districts, upon all the

assessable property within their respective districts, sufficient to pay the interest on bonds outstanding against such district, also to pay any other indebtedness incurred during the year in which such levy is made; and also to provide for a permanent sinking fund of not less than five per cent of the bonded indebtedness of their district. They shall, on or before the first day of September of each year, make an estimate of the amount of money necessary to be collected, together with the amount of assessable property within their district, together with the names of the owners thereof, and shall deliver said list to the county auditors of their respective counties. The county auditor shall apportion such assessment to each property owner within said district according to the values returned by the county assessor of the county in which such district is located, and all taxes so levied shall become a valid lien against such property and shall be collected by the county treasurer as other taxes are collected. For the purpose of providing moneys for the more extensive improvement of roads in such districts, there is hereby appropriated and the county auditor shall set apart seventy-five per cent of the general tax levy raised for road and bridge purposes in the district to the credit of such district, which shall constitute a fund for the improvement of the roads and bridges in such district.

"The county tax collector shall have power to collect delinquent poll tax in the same manner as provided for in cities and villages."

Under the above quoted statute a district had the power to levy taxes for three purposes only, to-wit: (1) to pay the interest on outstanding bonds; (2) to pay any other indebtedness incurred during the year in which the levy was made; and (3) to provide for a permanent sinking fund to satisfy existing bonded indebtedness.

Appellant has called our attention to the history of legislation of this state pertaining to the formation and existence of good roads districts for the purpose of aiding us, when construing the applicable statutes, in determining the legislative intent. We acknowledge that legislative intent may be ascertained by tracing the history of pertinent legislation (Sunset Memorial Gardens v. Idaho Tax Comm., 80 Idaho 206, 327 P.2d 766). The following brief résumé of the pertinent history of legislation affecting good roads districts is helpful in deciding the question before us.

The good roads district law in Idaho had its inception in an act of the 1905 Legislature known as House Bill 231 (hereinafter referred to as the 1905 Act). This act contained all of the provisions of I.C.

§ 40–1506, hereinbefore quoted, with the exception of the following quoted portion which was added by the legislature in 1909, to-wit:

"For the purpose of providing moneys for the more extensive improvement of roads in such districts, there is hereby appropriated and the county auditor shall set apart seventy-five per cent (75) of the general tax levy raised for road and bridge purposes in the district to the credit of such district, which shall constitute a fund for the improvement of the roads and bridges in such district."

Thereafter there was no major change in the good road district law until 1933, when the Legislature, by chapter 163 of the 1933 Session Laws (hereinafter referred to as the 1933 Act) repealed all statutes authorizing the creation of such districts together with all rights of such districts to issue bonds or to levy taxes except for the purposes enumerated in I.C. § 40–1506. Under said 1933 Act the legislature provided that such districts which had been organized could continue to exist but prohibited the organization of any such district thereafter.

Appellant argues that subsequent to the 1905 Act such districts, including appellant, had the authority to levy taxes in the district to raise money for the construction, improvement and repair of highways within the district, without distinction as to the nature of the construction or improvement, and that this authority has never been removed. We agree that a good roads district had the authority claimed from the time of its origin until the effective date of the 1933 Act, but we do not agree that such authority emanated from the statutory provisions governing good roads districts which remained in force after the enactment of the 1933 Act. The authority to levy such taxes was provided for in § 12 of the 1905 Act, in the following quoted language:

"When any such good roads district is organized under the provisions of this act, it shall supercede all other road districts or parts of districts within the limits of such good roads district and the good roads commissioners shall have the power to levy and apply all road taxes collected within their respective districts."

Said 1905 Act also authorized such districts to issue bonds for the building and repairing of any and all of the public roads within its district (Sec. 1); and provided that "The proceeds from the sale of such bonds shall be used exclusively for the purpose of the building or improvement of the roads and for the purchase of material, land, and machinery necessary for such improvements" (Sec. 5). These provisions (Secs. 1, 5 and 12) remained in effect until repealed by the 1933 Act, since

which time there has not existed (until 1963) any *statutory authority for a tax levy* by the appellant for any purpose other than for the payment of interest, providing for a sinking fund and to pay other indebtedness incurred during the year.

Appellant would have the language "other indebtedness incurred during the year" construed to include the cost of constructing and improving roads. With this contention we do not agree. When such language is considered in connection with sections 1, 5 and 12 of the 1905 Act and the amendment in 1909, it is convincing that the legislature intended thereby to authorize a special levy with which to make payment of miscellaneous and administrative expenses and minor maintenance costs incurred during the year.

In Hettinger v. Good Road Dist. No. 1, 19 Idaho 313, 113 P. 721, this court considered this very language and referred to it as authorizing a special tax. We consider this construction to be correct, such levy is authorized for the special or specific purposes stated as distinguished from general purposes.

We have hereinbefore called attention to the fact that the power to levy taxes must not only be expressly and distinctly granted, but it must be exercised in strict conformity with the terms of the grant. It would be a strained construction to say that the language used in I.C. § 40–1506

authorized a levy for all general purposes of the district.

Appellant cites authorities supporting the view that subsequent amendments may be utilized as an aid in arriving at the legislative intent as to the enactment amended, and calls attention to the amendment by the Session Laws of 1963. The 1963 Legislature amended said § 40–1506 by adding the following underscored language:

"It shall be the duty of the boards of good road commissioners to provide for a tax levy each year, within their respective districts, upon all the assessable property within their respective districts, *to pay for the maintenance, repair, construction and improvement of roads and highways, which levy shall not exceed $1.00 on each $100.00 of assessed valuation, and to provide for a tax levy each year* sufficient to pay the interest on bonds outstanding against such district * *."

and by deleting the words "also to pay any other indebtedness incurred during the year in which such levy is made," which words followed the foregoing quote.

Pursuing appellant's suggested aid to construction and assuming that I.C. § 40–1506 (as it was in 1959) was ambiguous, it appears to us that the 1963 amendment is an obvious indication that the legislature recognized that the purposes of the tax levy authorized under said statute prior

to the 1963 amendment did not include the purposes provided for in the amendment.

■ We are convinced that the trial court was correct in concluding that

"4. The portion of the tax levy by the Board of Commissioners of the Three Creek Good Roads District for the year 1959 levied for expenses to be incurred for the purpose of oiling or blacktopping same 7.8 miles of road within the District exceeded the authority of the Board of Commissioners and such portion of the levy was unauthorized and void; and plaintiff should be reimbursed the sum of $8,-523.02 * * *"

■ By reason of the 1963 amendment to Title 40 chapter 15 we conclude that the following quoted portion of the judgment entered by the trial court, to-wit:

"3. That Defendants, Commissioners of the Three Creek Good Road District, be and they are hereby restrained and enjoined from making any future levies for the purposes of oiling or blacktopping a road within the District."

should be and hereby is reversed and set aside.

In view of our disposition of this appeal, we deem it unnecessary to rule upon respondent's remaining contention, i. e., whether the levy involved constituted an arbitrary, discriminatory and confiscatory levy against the property of respondent. contrary to the provisions of Section 1 of the Fourteenth Amendment to the Constitution of the United States and contrary to the provisions of Article 1 Section 13 of the Constitution of the State of Idaho.

The judgment is affirmed as modified.

No costs allowed.

McQUADE, McFADDEN and SMITH, JJ., concur.

TAYLOR, J., did not participate in the decision.