401 P.2d 153

**COCHISE COUNTY et al., Appellants,**

v.

**SOUTHERN PACIFIC COMPANY,**
a corporation, Appellee.*
**No. 1 CA–CIV 32.**

Court of Appeals of Arizona.
April 22, 1965.

Rehearing Denied May 18, 1965.

Review Granted June 8, 1965.

Robert W. Pickrell, Former Atty. Gen., Darrell F. Smith, Atty. Gen., by Philip

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7632. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

M. Haggerty, Asst. Atty. Gen., for appellants.

Evans, Kitchel & Jenckes, by Joseph S. Jenckes, Jr., and William T. Boutell, Jr., Phoenix, for appellee.

CAMERON, Judge.

Southern Pacific Company, plaintiff below, brought a suit to collect an alleged over-payment of taxes in the amount of $24,904.92, plus interest and costs. Plaintiff prevailed, and the defendants below, appellants herein, being the counties in which the plaintiff does business, and the State Tax Commission, bring this appeal. The facts and background necessary to determine this matter are basically as follows:

The Arizona statutes provide that the members of the Arizona State Tax Commission constitute the State Board of Equalization, and that said Board of Equalization shall meet annually in the office of the State Tax Commission on the first Monday in August, A.R.S. § 42–141. The said State Board of Equalization is directed to fix the rate of taxation for state purposes to be levied and collected in each county, A.R.S. § 42–143. The method used, according to testimony, is to take the sum total of all of the appropriations and subtract from this amount of appropriations the total amount of estimated receipts from sources of revenue other than property taxation, plus any surplus that may be carried over from the year before, to arrive at the amount to be raised by state property taxation. The amount to be raised by real property taxation is divided into the amount of the net state valuation, which produces the state real property tax rate per one hundred dollars valuation for that year. In the year 1959, the State Tax Commission sitting as a Board of Equalization, arrived at a figure of 1.6998. As is customary, the matter was rounded off to provide a tax rate for the year 1959, of $1.70 per each one hundred dollars of valuation.

In arriving at this figure, the State Board of Equalization used the amount of $41,674,793.00, as the amount needed for average daily attendance in the primary and secondary schools of the State of Arizona. This figure had been supplied to the State Board of Equalization by the State Superintendent of Public Instruction on 8 July, 1959, pursuant to the Arizona Revised Statutes. The statutes provide that the legislature shall appropriate for the common school and high school education the amount of $170.00 per capita, per annum, computed according to the average daily attendance, as shown by the records of the Superintendent of Public Instruction, A.R.S. § 15–1211A. The statute further provides as follows:

"B. If the legislature fails to make the appropriation prescribed by subsection A the state board of equalization, when determining the annual tax levy for state purposes, shall include an amount sufficient to meet the minimum requirements of subsection A, and subsection A shall be deemed to constitute a continuing annual appropriation of the amount as determined by the minimum requirements therein prescribed." A.R.S. § 15–1211B.

In arriving at his computation, the State Superintendent of Public Instruction had taken the average daily attendance in elementary schools and multiplied that amount by $170.00. In the high school area, however, the Superintendent of Public Instruction computed the number of students in a different manner, called Average Daily Enrollment, rather than Average Daily Attendance. This was done on advice of the attorney general. Based on their average daily enrollment, the Superintendent of Public Instruction notified the Board of Equalization that in 1959, there were 59,501 high school students which when multiplied by $170.00 arrived at the total figure of $10,115,170.00. This was the figure used in arriving at the tax rate for the year 1959. The testimony of the secretary to the State Tax Commission

who was also the secretary of the State Board of Equalization, indicates that the Board of Equalization does not make an independent determination of figures with respect to Average Daily Attendance, but that the Board relies upon the figures that are presented to them by the Superintendent of Public Instruction.

■ A suit was brought, and the Arizona Supreme Court held that the definition of Average Daily Attendance as required in A.R.S. § 15–1212, requires that the computation be based on attendance, rather than enrollment, Long v. Dick, 87 Ariz. 25, 347 P.2d 581, 80 A.L.R.2d 949 (1959). Had this method of computation been followed by the Superintendent of Public Instruction, the number of students in high schools for 1959, would have been computed at 56,173, rather than the number of 59,501 actually submitted by the Superintendent of Public Instruction. This would mean that the total amount estimated to be collected for the year 1959, would have to be reduced in the amount of $565,760.00, and that the real property tax rate would have been reduced from $1.70 to $1.661 per one hundred dollars of assessed valuation. Plaintiff contends that the .039 cents additional assessment cost them the amount of approximately $24,000 in additional taxes. That the number of high school students, and therefore the amount required under the formula were incorrect, there is no dispute. That the State Board of Equalization accepted these figures without question there is no dispute, and whether the State Board of Equalization would be in a position to dispute the figures presented to them by the Superintendent of Public Instruction, we do not attempt to answer at this time. It would appear clearly that the State Board of Equalization was not guilty of any wrong doing or any fraud and did not abuse its discretion in setting the tax rate. The question therefore presented to us is basically this: When the State Tax Commission, sitting as a Board of Equalization, sets the tax rate of the State of Arizona honestly and without fraud based upon the best figures available to it, which tax rate is larger because of an incorrect figure or amount determined by the Superintendent of Public Instruction, may a taxpayer, who has over-paid his tax, recover the amount of that over-payment?

Our Supreme Court has discussed this matter generally as follows:

"The rule at the common law was that taxes voluntarily paid could not be recovered, Maricopa County v. Arizona Citrus Land Co., 55 Ariz. 234, 100 P.2d 587. Over-valuation of property is not a ground of action at law for the excess of taxes paid beyond what should have been upon a just valuation, Stanley v. Supervisors of Albany, 121 U.S. 535, 7 S. Ct. 1234, 30 L.Ed. 1000. Public policy discourages suits for the refund of taxes even where illegally collected. State ex rel. S. S. Kresge Co. v. Howard, 357 Mo. 302, 208 S.W.2d 247, and if the taxpayer desires to raise a question as to his taxes he is compelled to scrupulously follow the statutory procedures, Smotkin v. Peterson, 73 Ariz. 1, 236 P.2d 743, for the refund of taxes paid is by virtue of governmental grace rather than by reason of any legal right which the taxpayer has to such a refund. State v. Airesearch Manufacturing Co., 68 Ariz. 342, 206 P.2d 562." Southern Pacific Company v. Cochise County, 92 Ariz. 395 at 406, 377 P.2d 770 at 778 (1963).

Our courts have also indicated:

"In other words, if there is statutory authority to make the levy usually the courts have no right to review the administrative details of laying levies." Maricopa County v. Southern Pacific Company, 63 Ariz. 342 at 347, 162 P.2d 619 at 622 (1945).

■ The cases generally hold that the Board of Equalization acts in a quasi-judicial capacity. Their judgments are not subject to attack except for fraud or where

they act illegally. Valley National Bank v. Apache County, 57 Ariz. 459, 114 P.2d 883 (1941). We have an early Arizona case in which a mining company sued to enjoin the collection of taxes by the county tax collector, claiming that the Territorial Board of Equalization based their opinion in raising the amount of the assessed valuation of the company's mine upon false and erroneous abstracts. In that case, the Territorial Supreme Court stated as follows:

"While the action of the board may undoubtedly be subject to review in a suit brought to enforce a tax or to restrain the collection of a tax based thereon, the court may only inquire into such action for the purpose of ascertaining whether the territorial board of equalization had jurisdiction to make the order, or to determine, when the issue be raised, whether the board of equalization acted in bad faith or so arbitrarily as to amount to constructive fraud in adopting its scale of valuation. If the method adopted by the board be that which the statute directs, and it does not appear that the board acted thus arbitrarily or fraudulently, we may not inquire into the question whether the evidence which was before the board was sufficient to establish the justness of the scale of valuation found and applied in equalizing the taxes between the various counties for any year." United Globe Mines v. Gila County, 12 Ariz. 217 at 222 and 223, 100 P. 774 at 776 (1909).

And further:

"Had the complaint shown as a matter of fact that the board did not fix and determine some certain scale of valuation in some one of the modes pointed out by us in Territory v. Board of Supervisors, and apply this scale of valuation to the various counties * * * it would have made out a case of want of jurisdiction or authority on the part of the board to make the order complained of; but as the only grounds for complaint, as set forth in the complaint, were the use of the abstracts by the board of equalization instead of the assessment rolls and certain defects and erroneous statements in the abstracts, these do not raise a question of jurisdiction, and hence furnished no basis for relief, in so far as the territorial tax is concerned." United Globe Mines v. Gila County, supra, at 223 and 224, 100 P. at 776.

In the instant case, there is no showing that the State Tax Commission, sitting as a Board of Equalization, acted in bad faith or acted fraudulently or illegally. The Board certainly had the jurisdiction to fix the tax rate, indeed, it was a duty imposed upon them by the statute.

"A. The state board of equalization shall fix the rate of taxation for state purposes to be levied and collected in each county." A.R.S. § 42–143A.

That, based upon the incorrect information it received, the tax rate was larger than normal, does not make the tax itself illegal or the Board guilty of fraud. The test usually applied in determining whether a levy is excessive, is whether it is so grossly excessive as to constitute a constructive fraud upon the taxpayer. Rogge v. Petroleum County, 107 Montana 36, 80 P.2d 380 at 381 (1938). It has also been stated another way:

"* * * in estimating in advance the amount necessary for any purpose, a larger amount is levied than actually required affords the taxpayer no grounds for objection unless the amount levied is so grossly excessive as to show a fraudulent purpose. (Citations omitted.) The levy has not been shown to be unreasonable, and, in the absence of a showing of an abuse of discretion, we will not interfere with the decision of a taxing body on the question of the amount to be levied. (Citations omitted.)" People ex rel. Thompson v. Chicago

& N. W. R. Co., 397 Ill. 266, 73 N.E. 2d 418 at 421 (1947).

We do not find in the instant case, that the tax rate was so grossly excessive as to constitute a constructive fraud upon this or any other taxpayer. There is no showing of abuse of discretion on the part of the State Board of Equalization. There is no showing that they acted illegally or improperly, and while the tax was based on incorrect information, there is no showing that this was in itself an illegal tax, merely a showing that it was greater than it would have been had the correct information been used.

The judgment of the lower court is hereby reversed and remanded for further proceedings consistent with this opinion.

STEVENS, C. J., and DONOFRIO, J., concurring.