409 P.2d 549

COCHISE COUNTY et al., Appellants,

v.

SOUTHERN PACIFIC COMPANY,
a corporation, Appellee.

No. 8662–PR.

Supreme Court of Arizona.

En Banc.

Jan. 12, 1966.

————◆————

Robert W. Pickrell, former Atty. Gen., Darrell F. Smith, Atty. Gen., Philip M. Haggerty, Asst. Atty. Gen., for appellants.

Evans, Kitchel & Jenckes, by Joseph S. Jenckes and William T. Boutell, Jr., Phoenix, for appellee.

McFARLAND, Justice:

The Southern Pacific Company, hereinafter referred to as plaintiff, brought suit in three counts. Counts one and two sought to recover taxes paid under protest for the first half of the fiscal year 1959, and to enjoin future discriminatory assessments. Plaintiff appealed from a judgment granting a motion to dismiss counts one and two of its complaint, and this case was decided separately by this court in 92 Ariz. 395, 377 P.2d 770. Count three was against the same defendants—namely nine counties in which plaintiff does business, the county assessors of said counties, individually and as assessors, and the members of the State Tax Commission, individually, as members of the State Tax Commission and as members of the State Board of Equalization.

Plaintiff is a Delaware corporation owning and operating an interstate railroad system in the State of Arizona, a portion of which is located in the respective defendant counties. Plaintiff, under count three, sued for the total sum of $24,904.92, plus interest and costs which it had paid under protest to the county treasurers of said counties. Both plaintiff and defendants moved for summary judgment. The lower court granted summary judgment in favor of plaintiff which judgment was appealed, and the Court of Appeals, Div. 1, reversed the judgment, 1 Ariz.App. 199, 401 P.2d 153. This court granted plaintiff's motion for review.

A.R.S. § 42–301 provides, in part:

"B. On the second Monday of August each year, the state board of equalization shall levy upon the real and personal property within the state such amount of money as is necessary, with all other sources of revenue as estimated by the state board of equalization and all unencumbered balances on hand at the close of the preceding fiscal year, as fixed by law, to defray the necessary expenses of the state for the current fiscal year, including interest and principal of the bonds of the state, and shall fix the rate of taxation required to produce the amount of such levy."

A.R.S. § 15–1211 as amended, in effect in 1959–60, provided, in part:

"A. The legislature shall appropriate for common school and high school education one hundred seventy dollars per capita per annum, *computed according to average daily attendance in common and high schools as shown by the records of the superintendent of public instruction.* [The amount so computed and appropriated shall constitute the aggregate sum to be raised by state taxation for the support of common and high school education.] The legislature may designate the source of the revenue and prescribe the method of apportionment." [Emphasis added. § 15–1211 was amended in 1965 to exclude bracketed portion.]

A.R.S. § 15–1212, in effect in 1959 and 1960, provided, in part:

"B. Apportionments of the state school fund shall be made on the second Monday in July, October, January and April and, as nearly as possible, shall equal one fourth of the amount to be apportioned during the fiscal year. The superintendent of public instruction shall furnish the treasurer and the school superintendent of each county an abstract of the apportionment, and shall certify the apportionment to the state auditor, who shall draw his warrant in favor of the county treasurer of each county for the amount apportioned thereto. Upon receipt of the warrant the county treasurer shall notify the county superintendent that the amount thereof, together with any other monies standing to the credit of the county school fund, is subject to apportionment as prescribed by law.[1]

\*   \*   \*   \*   \*   \*

"E. Any determination of average daily attendance shall be based on the records of the superintendent of public instruction."

In the case of Long v. Dick, 87 Ariz. 25, 347 P.2d 581, 80 A.L.R.2d 949, petitioner Robert H. Long brought the following action:

"Petitioner, a resident of Maricopa County, Arizona, and a real property taxpayer in the Buckeye Union High School District, filed this original application in mandamus to compel respondent, the State Superintendent of Public Instruction, to compute the pupils in high school districts by actual attendance, and to certify and apportion monies in the state school fund to the respective counties in accordance therewith." 87 Ariz., at 26, 347 P.2d, at 582.

---

1. A.R.S. § 15–1212 was amended in 1961 in Para. B as to dates and amounts of apportionment.

We then set forth the reasons why this petition should be granted, and held:

"For the foregoing reasons, it is directed that the peremptory writ of mandamus issue." 87 Ariz., at 29, 347 P.2d, at 584.

In that case we recognized the duty of the superintendent of public instruction to compute the average daily attendance for high school students and to certify that number to the state board of equalization, and we set forth the basis for the computation.

In the instant case, which was brought in January 1960, after the decision in Long v. Dick, supra, decided in December of 1959, it is alleged that the state board of equalization purportedly acted pursuant to A.R.S. § 15–1211 and A.R.S. § 15–1212, and that the figure of $10,115,170.00, the needed allocation for high school students, as set forth was incorrect in that it included a sum of $170.00 per student for average daily high school attendance in the amount of 59,501 students, which had been computed by the superintendent of public instruction upon the basis of enrollment, or membership, in high schools, whereas it should have been based upon actual attendance in the number of 56,001, which would have made the amount of state taxes $1.-6590 per $100.00 assessed valuation rather than $1.70 for $100.00 assessed valuation, and that this actually increased the taxes of plaintiff in the amount for which sued.

Mr. W. E. Bissett, secretary of the state tax commission and the state board of equalization, whose deposition "was taken as an adverse party deposition" by the plaintiff, testified that the computation of 59,501 was taken from the certification of W. W. Dick, superintendent of public instruction. It does not appear from the depositions or the records in this case that the board of equalization had any information other than that contained in the certification of the records of the average daily attendance of pupils eligible for state aid in the Arizona public schools as furnished to the state board of equalization.

The deposition of G. W. Harrell, director of research and finance for the state board of public instruction, which also was "taken as an adverse party deposition," was to the effect that the figure of 59,501 was based upon enrollment rather than actual attendance, and there was attached to his deposition as plaintiff's exhibit the certification of the average daily attendance of students eligible for state aid in Arizona public schools, giving the figure of 59,501 for high schools. At no place in the certification does the method appear upon which the total number was based, nor does it appear from the records or in the depositions that the board of equalization had any knowledge of the basis of the computation used by the superintendent of public instruction in arriving at 59,501.

The state board of equalization, on the basis of this certification and in accordance with provisions of A.R.S. § 42–301, in the August meeting fixed the tax rate at $1.70 per $100 valuation, which it determined was sufficient to raise the $10,115,-170.00 needed for high schools. The superintendent of public instruction filed a corrected certification on April 11, 1960, in accordance with the decision of this court in Long v. Dick, supra, listing the average daily attendance of high school students at 56,173, and the total allocation for high school students at $9,549,410.00.

The records and decision of this court on the first two counts—Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770—show that plaintiff appeared before the board of equalization and objected to the value of its property as assessed, stating that it was discriminatory, and requested that the board of equalization equalize the assessment either by lowering it to the average of other properties or raising other assessments to full cash value. But at no time did plaintiff object to the method of determining the average daily high school attendance by the superintendent of public instruction, as certified to the state board of equalization, or to the amount to be levied therefor. The record shows that payments made to respective high school districts were on the basis of the corrected number of average daily attendance certified by the superintendent of public instruction, and that the money received as a result of the difference between these rates went into the general fund as surplus. W. E. Bissett, secretary to the state tax commission and the state board of equalization, testified by deposition that pursuant to A.R.S. § 42–301, subsec. B a surplus at the end of the fiscal year is carried over to reduce the property tax rate for the subsequent year. Hence, in the instant case the sums of money unexpended for school purposes—being money derived from taxes paid by all taxpayers—necessarily resulted in a reduction of the property taxes to all taxpayers, including plaintiff.

The question then is whether, under these facts, plaintiff is entitled to judgment against the counties, the assessors, the state tax commission, and the state board of equalization for the amount of the tax.

A.R.S. § 42–341 provides, in part:

"A. The county treasurer shall be ex officio tax collector and shall collect all state and county taxes and apportion the taxes to the several funds at the end of each month."

Under this provision of law the monies in question were collected by treasurers of the respective counties, and paid to the state treasurer.

A.R.S. § 42–351 provides, in part:

"C. The treasurer shall keep separate and distinct his accounts as ex officio tax collector and as county treasurer.

As tax collector he shall turn over all collections to himself as county treasurer on the last day of each month and his books, both as tax collector and as county treasurer, shall so indicate."

It will be noted that under these two sections the respective counties made defendants in this case did not receive any part of the money in question because it was collected by the county treasurer as ex officio state tax collector, kept in a separate and official account, and remitted to the state treasurer. The county assessors were properly made parties to the suit on counts one and two of the complaint, but not in the instant case, inasmuch as they had nothing to do with the money under count three. The state tax commission or the state board of equalization did not receive any part of the money, and had no way of making corrections in regard to the same.

In Riggins v. County of Maricopa, 60 Ariz. 168, 133 P.2d 759, plaintiff sued the county of Maricopa, the county assessor, and the county treasurer for money paid under the "vehicle privilege license tax." The statute made it the duty of the county assessor to transmit these taxes to the state treasurer through the state auditor for the credit of the general fund. In ruling on the right of plaintiff to recover money thus paid, we held:

"The trial court denied plaintiff any relief and dismissed his complaint. From such judgment he has appealed. He bases his right to recover upon the court's decision in County of Maricopa v. Hodgin, 46 Ariz. 247, 50 P.2d 15, 101 A.L.R. 793. In the Hodgin case we held that a tax unit, such as a county or one of its officers, that has collected a tax on property exempt under the constitution, is a proper party defendant in an action to recover such tax, even though it may have been collected for different tax units and distributed to them.

"Here, while it was the duty of the county assessor to receive the tax, it was his duty to remit it to the state treasurer. The county and its officers had no control or right of control of the tax sued for. Such fund is now, and all the time has been, in the possession of the state treasurer. The fund did not belong to the county or county assessor or any other county officer and they had no power over its use or disposition." 60 Ariz. at 169, 133 P.2d at 760.

As will be noted from A.R.S. § 15–1212, subsec. B, supra, the funds are distributed by this procedure: The state superintendent of public instruction furnishes the state treasurer and the school superintendent of each county an abstract of the apportionment, and certifies the apportionment to the state auditor, who draws a warrant in favor of the county treasurer of each coun-

ty for the amount apportioned thereto. The state treasurer is not a party to the suit in the instant case. However, there are other facts which we feel should be decisive of the appeal.

We have not passed upon the question of an excessive tax rate under identical facts as in the instant case; however, we have held the board of equalization, in carrying out its tax-setting power, acts judicially, and cannot be attacked in the absence of a showing that the board acted in bad faith, or so arbitrarily as to amount to constructive fraud. In the early case of United Globe Mines v. Gila County, 12 Ariz. 217, 100 P. 774, an increase in valuation by the territorial board of equalization was attacked on the ground that the board, in making such increase in valuation of certain mining claims, used as the basis for same, abstracts of assessment rolls furnished by the boards of supervisors in the counties involved, and not upon inspection or examination of the assessment rolls from which the abstracts were taken. The territorial court upheld the increase in valuation for territorial taxes based upon the abstract upon the ground that it was not alleged or shown that the board of equalization had acted in bad faith, or so arbitrarily as to amount to fraud. The court, in thus holding, used the following language:

"* * * *While the action of the board may undoubtedly be subject to review in a suit brought to enforce a tax or to restrain the collection of a tax based thereon, the court may only inquire into such action for the purpose of ascertaining whether the territorial board of equalization had jurisdiction to make the order, or to determine, when the issue be raised, whether the board of equalization acted in bad faith or so arbitrarily as to amount to constructive fraud in adopting its scale of valuation.* If the method adopted by the board be that which the statute directs, and it does not appear that the board acted thus arbitrarily or fraudulently, we may not inquire into the question whether the evidence which was before the board was sufficient to establish the justness of the scale of valuation found and applied in equalizing the taxes between the various counties for any year. Boards of equalization act judicially, when within their jurisdiction, and their determinations are not open to collateral attack. Stanley v. Supervisors [of Albany County], 121 U.S. [535] 550, 7 Sup.Ct. 1234, 30 L.Ed. 1000. The complaint does not show the existence of any act which indicates that the territorial board of equalization in making its order increasing the valuation of patented mines in Gila county based upon the scale of valuation ascertained by it

from an inspection of the abstracts returned from the counties of Graham, Pima, Pinal, Maricopa, and Santa Cruz acted in bad faith or arbitrarily, and without reference to the facts disclosed by said abstracts; nor does it appear from the complaint that the scale of valuation applied in Gila county and the other counties in which increases were ordered was not the same as that disclosed by the abstracts furnished by the boards of supervisors from the said counties of Graham, Pima, Pinal, Maricopa and Santa Cruz." [Emphasis added.] 12 Ariz. at 222, 100 P. at 776.

There the board used the abstract of assessment rolls instead of the actual assessment rolls in ascertaining the valuation. Here the state board of equalization unknowingly used incorrect figures furnished by the state superintendent of public instruction.

Other states have fixed the limitations for a recovery in holding that levies must be arbitrary or fraudulently made. In People ex rel. Thompson v. Chicago & N. W. R. Co., 397 Ill. 266, 73 N.E.2d 418, there was a levy of some $2,000 more than the difference between the estimated expenditure of some $20,000 and an amount to be received from the state, $14,000. In sustaining the levy the court stated:

"* * * The mere circumstance that, in estimating in advance the amount necessary for any purpose, a larger amount is levied than actually required affords the taxpayer no grounds for objection unless the amount levied is so grossly excessive as to show a fraudulent purpose. People ex rel. Wilson v. Wabash Railway Co., 368 Ill. 497, 14 N.E.2d 650; People ex rel. Stuckart v. Chicago & Alton Railway Co., 289 Ill. 282, 124 N.E. 658. The levy has not been shown to be unreasonable, and, in the absence of a showing of an abuse of discretion, we will not interfere with the decision of a taxing body on the question of the amount to be levied. * * *" 73 N.E.2d at 421.

The case of State ex rel. and to Use of Johnson v. St. Louis-San Francisco Ry. Co., 315 Mo. 430, 286 S.W. 360, involved a suit to recover a tax levied to pay interest on bonded indebtedness. The claimants contended the levy was invalid, based on the ground that it was grossly excessive in that there was a balance to the credit of the bonded debt fund and a surplus when at a later date the bonds were taken up. The court, in passing on this question, said:

"* * * Whether, however, the levy was so excessive as to be constructively fraudulent must be judged not from the fact that it subsequently developed that a larger amount was levied than was actually required, but from the

entire situation which confronted the county court at the time the levy was made. \* \* \*" 286 S.W. at 362.

While the court in this decision referred to the method of estimating the tax, the principle of law in regard to fraudulent levies is the same.

In State ex rel. Woodward v. Peal, 136 Kan. 136, 13 P.2d 302, which was a mandamus proceeding involving validity of property taxes, the court held:

"This reduces the question involved to whether the county commissioners acted arbitrarily, capriciously, or fraudulently. It is stipulated as a fact that the county commissioners exercised their judgment and discretion, taking into consideration their previous experience and available records. The cost of government is not a fixed charge, nor are the assets out of which taxes are to be raised always uniform. The county commissioners must take into consideration, in making a levy, any change that will be apparent in the needs of a particular fund, the amount of taxes that may be received from miscellaneous sources, and the amount of taxes that may not be paid. It was their responsibility, and they had the authority to determine the amount necessary to maintain the county government, and, in the absence of a clear abuse of this discretionary power, their action cannot be interfered with, unless the amount is so grossly excessive as to show a fraudulent purpose in making the levy. The agreed facts obviate any suggestion of fraud or bad faith, or lack of consideration on the part of the county commissioners. Under such circumstances, we cannot say that the levy is so excessive as to render it void." 13 P.2d at 306.

Examination of the facts in the instant case shows that the state board of equalization did not act arbitrarily or fraudulently, because it acted as the statute directed on the certification of the state superintendent of public instruction. He was acting upon the advice of the attorney general. The attorney general was, by law, his legal advisor, hence there could be no claim of bad faith or fraud in this case. A.R.S. § 41–192, § 41–193. The levy was not grossly excessive, arbitrary, or fraudulent, because, as indicated by the record, use of average daily attendance in high schools calculated on the basis of attendance rather than enrollment, for the year 1959, in fact resulted in a tax rate of only $1.661 instead of $1.70.

The board of equalization has the duty of fixing the rate of levy for state taxes as prescribed in A.R.S. § 42–141 et seq. Unless this rate was so grossly excessive as to show it was arbitrary or fraudulent, as held in United Globe Mines v. Gila County, supra, and other cases cited

herein, such a levy cannot be set aside. Although the board acted on incorrect information, there was no showing that the rate was grossly excessive, or that the action of the board was in fact arbitrary or fraudulent.

The judgment of the superior court is reversed, and the case remanded with directions to enter judgment in favor of defendants.

STRUCKMEYER, C. J., and UDALL, J., concurring.

BERNSTEIN, Vice Chief Justice (dissenting).

I regret that I must dissent. I respectfully submit the majority opinion proceeds upon the erroneous premise that the Board of Equalization acted judicially in carrying out its tax power and therefore cannot be attacked in the absence of showing that it acted in bad faith or so arbitrarily as to amount to constructive fraud. The majority states the issue to be whether the Board has abused its discretion. The correct issue is whether the Board has any discretion.

The majority opinion holds that a public official can violate the mandatory provisions of a statute if he acts in good faith and the results of his disobedience are not sufficiently excessive to constitute constructive fraud. The opinion simultaneously emasculates A.R.S. § 42–204, subsec. C which allows, after payment under protest, an action to recover any tax illegally collected, "and if the tax due is determined to be less than the amount paid, the excess shall be refunded * * *". The majority does not think a tax is collected "illegally" though the formula by which it is determined is contrary to an express statutory mandate.

Sections 42–301, subsec. B and 15–1211, subsecs. A, B require the Board of Equalization to levy an amount to defray necessary education expense for the current year. The amount required for education is determined by multiplying $170 times the average daily attendance (ADA). The $170 figure was set by the legislature, § 15–1211, subsec. A. The ADA is the actual attendance figures shown by the records of the Superintendent of Public Instruction, § 15–1212, subsec. E. In 1959 the Superintendent reported a figure to the Board of Equalization based upon enrollment rather than actual attendance. The enrollment figure was over 3,000 greater than the attendance figure. The Board multiplied the high figure times $170 and, as a consequence, levied and collected over a half million dollars more taxes than permitted. That is, a half million more than would have been collected had the ADA figure been used as required by the statute, Long v. Dick, supra. Plaintiff's share of the illegally collected excess was approximately $25,000 which it paid under pro-

test. An action to recover the money was instituted pursuant to A.R.S. § 42–204, and we took the case after the appellate division reversed the trial court's summary judgment for plaintiff. Cochise County v. Southern Pacific Company, 1 Ariz.App. 199, 401 P.2d 153.

Before stating my analysis of the case, I think it is necessary to answer the express and implicit reasoning of the majority opinion. When the Superintendent submitted the enrollment figure to the Board he acted upon the attorney general's advice who erroneously construed the applicable statute. The Board relied upon the Superintendent's figure. Hence, no one acted fraudulently or in bad faith. I agree. The majority next states the general principle that the Board, in carrying out its tax-setting power, acts "judicially" and its decision will not be overturned in the absence of bad faith or fraud. The statement is true but has no application to the case at bar. In this case the Board and the Superintendent were obliged to perform ministerial duties clearly defined and circumscribed by the statute. The word "judicially" contemplates an act resulting from the exercise of judgment or discretion. Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz. 77, 191 P. 2d 169. There was no room for discretion here. The Superintendent either submitted a figure based upon actual daily attendance or he did not. The Board either calculated the accurate school expense figure or it did not. There was only one correct figure authorized by the statute. Concerning the nature of such a ministerial act, we have said:

> " * * * 'An act is ministerial where the law requiring it to be performed, prescribes the time, manner, and occasion of its performance with such certainty that nothing remains for judgment or discretion.' " State v. Airesearch Mfg. Co., Inc., 68 Ariz. 342, 350, 206 P.2d 562, 568.

The United Globe case primarily relied upon by the majority, is inapplicable. First, it is factually distinguishable because the Board was not compelled by statute to consider the assessment rolls which the plaintiff though it should consider. This difference between the cases is vital. Furthermore, the particular act challenged in the United Globe case was clearly within the Board's ambit of discretionary power granted by statute. Secondly, in that case the court recognized the distinction between attacking the Board because it acted in violation of the statute and attacking its decision as an abuse of discretion. The sentence immediately following the underlined portion of the quote used by the majority states:

> "If the method adopted by the board *be that which the statute directs,* and it does not appear that the board acted thus arbitrarily or fraudulently, * *." (Emphasis added)

**396**

The court further stated:

> "Had the complaint shown as a matter of fact that the board did not fix and determine some certain scale of valuation in some one of the modes pointed out by us in Territory v. Board of Supervisors, and apply this scale of valuation to the various counties—* * * it would have made out a case of want of jurisdiction or authority on the part of the board to make the order complained of; * * *." 12 Ariz. at 222–224, 100 P. at 776. (Emphasis added).

In other words, the court said that if the Board had violated its statutory directives, plaintiff's relief would have been granted. That is precisely the situation before us. All of the decisions cited by the majority opinion assumed the existence of the administrator's discretionary power to act and dealt solely with the question of whether the discretion was abused. They are irrelevant to the issue in this case. In that connection, the act will not be overturned in the absence of bad faith, fraud or arbitrariness. But the question before us is whether there has been a statutory grant of discretion in the first place. Put another way, the distinction is between "legality" and "propriety". Legality imports conformity to law and the legality of an act depends upon its observance of applicable law. Propriety connotes conformity to a norm of conduct and signifies appropriateness, suitability, fitness or correctness. A judicial inquiry of the legality of an act requires examination of the law upon which it is predicated. Judicial inquiry as to the propriety of an act involves judgment upon the discretion and wisdom exercised in the circumstances. In re Whitford's Liquor License, 166 Pa.Super. 48, 70 A.2d 708. In the case before us, the issue is legality, not propriety.

The majority opinion suggests that everything is all right because the Superintendent acted upon the advice of the attorney general in submitting the enrollment figure to the Board rather than the ADA figure. Perhaps the majority thinks there was discretion to interpret the statute, prior to our decision in Long v. Dick, and the good faith acts based upon that interpretation should not be overturned. Apart from the fact that the decisions cited by the majority do not deal with that type of power or discretion, I note the fact that performance of administrative duties may necessitate construction of a statute imposing those duties, but that does not necessarily make performance a matter of judgment and discretion. Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809. The performance may still be ministerial, as it is in this case. Hence, the issue is still "legality" not "propriety".

The specific problem of the effect of an act based upon a statutory interpretation later changed came before the United States Supreme Court in Montana Nat. Bank v. Yellowstone County, 276 U.S. 499, 48 S.Ct. 331, 72 L.Ed. 673 where the plaintiff bank

was taxed on the assessed value of shares of stock and paid under protest. The suit to recover alleged that the assessment, levy and Montana statutes were invalid as contrary to a federal statute which required that the tax rate on national bank stock not be greater than the assessment upon other moneyed capital in the state. The assessment was made in conformity with state statutes as construed by the state supreme court in an earlier case which decision the tax officials were legally bound to follow. The court said:

"It is true that the state Supreme Court in the present case expressly repudiated the construction theretofore put by it upon the state statutes * * and, as already stated, adopted one to the exact contrary. But that does not cure the mischief which had been done under the earlier construction. That construction had already been acted upon by the taxing officials and the application thus made of the statutes had given rise to the present cause of action and an undoubted right to recover thereon. * * * Plaintiff in error cannot be deprived of its legal right to recover the amount of the tax unlawfully exacted of it by the later decision which, while repudiating the construction under which the unlawful exaction was made, leaves the monies thus exacted in the public treasury." 276 U.S. 504–505, 48 S.Ct. 333.

In another context, this court has said:

"It is fundamental that the respondent (Motor Vehicle Superintendent) could not enact a regulation nor make an order that would conflict with the proper interpretation of the statute." McCarrell v. Lane, 76 Ariz. 67, 70, 258 P.2d 988, 989.

The case before us was triggered by a decision which is a clear example of the above principle. In Long v. Dick, supra, the Superintendent of Public Instruction attempted to submit a pupil count based upon an erroneous interpretation of the applicable statute. We issued a peremptory writ of mandamus ordering him to act pursuant to the correct interpretation of the statute. The majority opinion in this case states that in Long v. Dick "we recognized the *duty* of the superintendent of public instruction to compute the average daily attendance for high school students and to certify that number to the state board of equalization". (Emphasis added) In the Long case we did not say the Superintendent's good faith insulated his act from corrective measures. Good faith bears upon discretion and the issue was duty, not discretion. In the case before us I think it perfectly clear that the Board and Superintendent had no power or discretion to interpret the statute, but if they did their erroneous construction does not deprive plaintiff of its right to recover. Long v. Dick, supra; Wilbur v. United States ex rel. Kadrie, supra.

The majority opinion states that the illegally collected tax created a surplus which was carried over to the next year. This lowered the tax rate which "necessarily resulted in a reduction of the property taxes to all taxpayers, including plaintiff." I can only assume the majority thinks the reduced tax rate for the following year has already compensated plaintiff for the amount of tax illegally collected from it. Perhaps they assume plaintiff will receive a windfall if we find in its favor. Such reasoning is erroneous. In the first place, it is against the policy of the law to raise more taxes than is needed and the intentional accumulation of surplus is illegal; a tax cannot be levied in excess of the amount required for the purpose for which it is levied. Rogge v. Petroleum County, 107 Mont. 36, 80 P.2d 380; Bowman v. County of Lake, 29 Ill.2d 268, 193 N.E.2d 833. The State concedes in its brief that our law prohibits the accumulation of a surplus. In the second place, any particular taxpayer may not own the same amount or type of property or its value may be greatly depreciated in the year when the tax advantage occurs as he owned when the excessive tax was collected. Hence, it is impossible to assume the particular taxpayer benefited by the following year's lowered tax rate. We cannot assume plaintiff benefited by the lowered tax rate because there is no evidence comparing its 1959 and 1960 property holdings. In the third place, the idea of a windfall smacks of equitable considerations which this court may not entertain. Plaintiff is pursuing a clearly legal remedy to recover upon a debt. Equity must follow the law.

I must also disagree with the majority opinion that the suit should be dismissed because the state treasurer was not made a party defendant. See Maricopa County v. Arizona Citrus Land Co., 55 Ariz. 234, 100 P.2d 587 and Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770.

In Southern Pacific Company v. Cochise County supra, I joined with the court in denying the relief requested by plaintiff in counts one and two of the complaint of which the case before us was count three. My concurrence with the majority in that opinion obligates me to explain my dissent here. In that case we were concerned with the economic security of our taxing units which would have been seriously jeopardized had we allowed plaintiff to recover. Counts one and two of the complaint dealt with the assessment rate applied to plaintiff's property which was many times greater than the rate applied to other property in the state. This discriminatory practice had existed for over sixty years. Plaintiff sought to recover 77% of the first half of the 1959 taxes assessed on property valued at over sixty-five million dollars. We took judicial notice of the fact that the taxing subdivisions of Arizona had long predicated their fiscal affairs upon the allegedly discriminatory practices which had gone un-

challenged. Refund of taxes is a matter of governmental grace expressed through the refunding statute. We said the refund sought by plaintiff threatened the financial solvency of many state taxing units and held as a matter of public policy that the situation was clearly beyond the contemplation of the legislature in the enactment of the refunding statute.

In the case before us, I think the refunding statute must apply. The $25,000 sought by plaintiff will not shake the state's economic stability. The precedent of a decision in plaintiff's favor will not precipitate a flood of litigation because claims for refunds are available to those taxpayers who paid under protest.

My analysis of this case and the reasons for my opinion are quite simple. A.R.S. § 42–204, subsec. C entitles a taxpayer to recover any excess tax illegally collected. I contend the taxing authority acts illegally when it violates the express, mandatory provisions of an applicable statute. The statute compels the Superintendent to submit the ADA figure to the Board. He did not. The statute compels the Board to multiply the ADA figure times $170 to arrive at the necessary expense for education. The Board did not. The jurisdiction, powers and duties of the Board are strictly limited by statute. State v. Board of Supervisors 14 Ariz. 222, 127 P. 727; Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz. 77, 191 P.2d 169. Acts of administrative officers or agencies which go beyond the purview of the statute granting their powers are not merely erroneous but are void. Flavell v. Department of Welfare, C. & C. of Denver, 144 Colo. 203, 355 P.2d 941; State v. Airesearch Mfg. Co., 68 Ariz. 342, 206 P.2d 562; Kincannon v. Irwin, 64 Ariz. 307, 169 P.2d 861. Every taxpayer has the right to insist that every board or officer having any authority connected with the levy and assessment of taxes shall, in the exercise of his duties, pursue the methods required by the statute. Orr v. State Board of Equalization, 3 Idaho 190, 28 P. 416. Courts will grant relief where a taxpayer has been injured because tax officials adopt the wrong principle or method of levying taxes. Lubbock Hotel Co. v. Lubbock Independent School Dist. (Tex.Civ. App.) 85 S.W.2d 776. The taxing power must be exercised in strict conformity with the statutory terms. Idaho Power Co. v. Three Creek Good Roads Dist., 87 Idaho 109, 390 P.2d 960. The plaintiff is entitled to recover. Judgment of the trial court should be affirmed.

LOCKWOOD, J., concurring.