**SOUTHERN PACIFIC COMPANY, a corporation; the Atchison, Topeka and Santa Fe Railway Company, a corporation; Pacific Fruit Express Company, a corporation, Plaintiffs,**

v.

**L. Waldo DEWITT, John M. Hazelett and Robert A. Kennedy, Individually and as members of and constituting the State Tax Commission of the State of Arizona, et al., Defendants.**

**No. CIV. 6669 Phx.**

United States District Court
D. Arizona.

July 2, 1968.

Robert L. Pierce, San Francisco, Cal., Joseph S. Jenckes, Jr., of Evans, Kitchel & Jenckes, Phoenix, Ariz., for Southern Pacific Co. and Pacific Fruit Express Co.

C. George Niebank, Chicago, Ill., Philip E. von Ammon of Fennemore, Craig, von Ammon, McClennen & Udall, Phoenix, Ariz., for Atchison, Topeka and Santa Fe Railway Co.

Darrell F. Smith, Atty. Gen., James D. Winter and Stanley Z. Goodfarb, Phoenix, Ariz., Robert K. Corbin, County Atty., Maricopa County, Ariz., by Jane Greer and Olgerd W. Kalyna, special counsel, for defendants.

Before JERTBERG, Circuit Judge, and MUECKE and COPPLE, District Judges.

## OPINION

MUECKE, District Judge.

### STATEMENT OF THE ACTION

This action was brought by Southern Pacific Company; The Atchison, Topeka and Santa Fe Railway Company; and Pacific Fruit Express Company against the members of the Arizona State Tax Commission, the boards of supervisors, the assessors, and the treasurers of various counties,[1] individually and in their official capacities. The state treasurer was not named as a defendant.

The plaintiffs seek to have Chapter 6, House Bill 1, Law of Arizona 1967, Third Special Session,[2] and particularly

---

1. Apache, Cochise, Coconino, Gila, Graham, Greenlee, Maricopa, Mohave, Navajo, Pima, Pinal, Santa Cruz, Yavapai, and Yuma.

2. See Appendix "A" for the entire context of the Bill as passed by the Arizona Legislature.

ch. 6, § 3 thereof (A.R.S. § 42–227), declared invalid and unconstitutional to the extent it requires assessment of plaintiffs' properties at a different ratio of full cash value than that applied to the property of other carriers and utilities placed in "Class Two" and other carriers and other commercial and industrial enterprises placed in "Class Three" by this legislation. House Bill 1 also established new classifications of property for taxation (A.R.S. § 42–136) as set forth in Appendix "A".

The plaintiffs also seek to restrain and enjoin the assessing of their property, the fixing of the tax rates for the year 1968, and the collecting of the property taxes for the year 1968. At the same time plaintiffs filed their complaint, they also filed a Motion for Preliminary Injunction and request that a three-judge District Court be impaneled as provided by 28 U.S.C.A. § 2284. A three-judge court was so impaneled, and its impaneling as such is not and has not been at issue.

The defendants, however, have filed a Motion To Dismiss For Lack Of Jurisdiction on the basis of 28 U.S.C.A. § 1341[3] and the Eleventh Amendment to the United States Constitution.[4]

Although plaintiffs recognize that as a general rule, 28 U.S.C.A. § 1341 would bar this Court's jurisdiction[5] plaintiffs allege that "a plain, speedy, and efficient remedy" may not be had in the State's courts. Paragraph XIV of the plaintiffs' complaint (pp. 12–15) sets forth their reasons for believing that they have no plain, speedy, and efficient remedy in the state courts of Arizona. These reasons were elaborated on by plaintiffs' brief, filed May 23, 1968, in opposition to defendants' motion to dismiss and by the oral argument heard by this Court on May 27, 1968.

Specifically, the plaintiffs allege that in the state courts:

1. There is no plain remedy because:

(a) Plaintiffs are uncertain who would be the proper party or parties to sue for a tax refund (pp. 5–7 of plaintiffs' brief in opposition to motion to dismiss);

(b) Plaintiffs are uncertain of what an "illegally collected" tax is (pp. 7–8 of plaintiffs' brief in opposition to motion to dismiss);

(c) Plaintiffs are uncertain whether or not A.R.S. § 42–204 will be given effect by the state courts (pp. 8–10 of plaintiffs' brief in opposition to motion to dismiss); and

(d) Plaintiffs are uncertain how to collect any refund judgment it might receive (p. 10 of plaintiffs' brief in opposition to motion to dismiss).

2. There is no speedy remedy because it would take many years to fully litigate the action to a final judgment in the state courts due to the courts' backlog of cases (pp. 10–11 of plaintiffs' brief in opposition to motion to dismiss).

3. There is no efficient remedy because the Arizona statutes make no provision for payment of judgments rendered against the State or any of its political subdivisions (pp. 11–17 of plaintiffs' brief in opposition to motion to dismiss).

Plaintiffs further alleged that the Eleventh Amendment to the United States Constitution did not prohibit this Court's taking jurisdiction, basing their

---

3. "28 U.S.C.A. § 1341. *Taxes by States* The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State. June 25, 1948, c. 646, 62 Stat. 932."

4. "*Amendment XI—Suits Against States* The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

5. See annotation, "State Taxes—Federal Injunction", 17 L.Ed.2d 1026.

contention essentially on Griffin v. County School Board of Prince Edward County (1964) 377 U.S. 213, 84 S.Ct. 1226, 12 L.Ed.2d 256.

A three-judge District Court having been properly convened pursuant to 28 U.S.C.A. §§ 2281 and 2284, briefs having been filed, and oral argument having been had on the defendants' Motion To Dismiss For Lack Of Jurisdiction, it is the unanimous decision of this Court that the defendants' motion to dismiss this action shall be granted.

It is the opinion of this Court that under the laws of the State of Arizona, a plain, speedy, and efficient remedy may be had by the plaintiffs in the courts of such state. This Court, therefore, is prohibited by the terms of 28 U.S.C.A. § 1341 from assuming jurisdiction. We need not consider the Eleventh Amendment question since our view of 28 U.S.C.A. § 1341 disposes of the matter.

DISCUSSION OF ARIZONA CASES RULING ON THE ADEQUACY OF TAXPAYERS' REMEDY AT LAW —PRIOR TO CURRENT TAX LEGISLATION

In order to facilitate the full understanding of the case before this Court, some preliminary statements and observations must be made. The legislation under attack by the plaintiffs was enacted as a result of several decisions [6] by the courts of Arizona.

An Arizona statute in effect at the time of the *McCluskey, Southern Pacific,* and *Bade* decisions (see footnote 6 for citations) provided:

"All taxable property shall be assessed at its full cash value. Real estate and the improvements thereon shall be separately assessed." A.R.S. § 42–227. (This statute was amended in 1967)

This statute (A.R.S. § 42–227) was completely disregarded by the county as-

sessors. For many years the assessors assessed similar property at varying percentages of their full cash value, but always less than the full cash value. In each of the three cases cited above, the plaintiffs sought to enjoin the discriminatory assessment practice of the county assessors, and in each case the plaintiffs were successful.

Initially these three cases, together with a fourth case, Drachman v. Jay (1966) 4 Ariz.App. 70, 417 P.2d 704, deserve analysis insofar as they pertain to the adequacy or inadequacy of the remedy at law available to the plaintiff taxpayers in each of these cases, as contrasted with the equitable remedy provided by an injunction.

In McCluskey v. Sparks (1955) 80 Ariz. 15, 291 P.2d 791, it was alleged that the assessor systematically and intentionally undervalued the plaintiffs' property at a percentage less than full cash value, which percentage was nevertheless greatly in excess of the percentage of full cash value used for other like properties. The complaint stated that the assessed values of plaintiffs' properties were increased from 300 to 1600 percent over previous assessments, whereas the values of like or similar properties in the county were not increased. 80 Ariz. at 17, 291 P.2d at 792.

The plaintiffs had appeared before the county board of equalization seeking to have the values equalized, but the board approved the increases, saying the values were equitable in relation to the cash values of the properties. 80 Ariz. at 18, 291 P.2d at 793.

The county, in opposing the injunction sought in the *McCluskey* case, claimed the plaintiffs had an adequate remedy at law under the provisions of section 73–419, A.C.A.1939, which allowed an appeal to the superior court from the action of the county board of equalization when a taxpayer was dissatisfied with

6. McCluskey v. Sparks (1955) 80 Ariz. 15, 291 P.2d 791; Southern Pacific Company v. Cochise County (1963) 92 Ariz. 395, 377 P.2d 770; Bade v. Drachman (1966) 4 Ariz.App. 55, 417 P.2d 689.

the amount of his assessment. The lower court agreed with the county and dismissed the case.

The Supreme Court, however, disagreed with the lower court and declared that § 73–419 must be considered in conjunction with section 73–110, A.C.A. 1939. The court in *McCluskey* pointed out that section 73–110, A.C.A.1939, provided that in appealing the board's determination to the superior court the plaintiff in such legal action may prove only the full cash value of the property in question. The trial court was limited by section 73–110 to finding the full cash value and rendering judgment for the payment of the tax on that basis, whether it be more or less than the value fixed by the taxing officials. 80 Ariz. at 19, 291 P.2d at 793.

The Arizona Supreme Court, in thus reversing the lower court, found the valuation applied to the plaintiffs' property to be unconstitutional and held that:

> "Deliberate and systematic undervaluation of plaintiffs' property at a figure greatly in excess of the undervaluation of other like properties amounts to a violation of the Arizona Constitution, Article 9, Section 1, which requires that all taxes 'shall be uniform upon the same class of property within the territorial limits of the authority levying the tax * * *' and offends the equal protection clause of the Fourteenth Amendment to the Constitution of the United States." McCluskey v. Sparks (1955) 80 Ariz. at 19, 291 P.2d at 793.

In reaching its decision, the *McCluskey* court reasoned:

> "It is plain that when the issue to be tried is discrimination calling for proof of systematic and intentional disproportionate undervaluation, the appeal remedy prescribed by sections

73–419 and 73–110, supra, is no remedy at all for the reason that the issues concerning such a discrimination could not be tried and decided under the appeal remedy." 80 Ariz. at 19, 291 P.2d at 793.

In this same action the county also sought to invoke section 26–104, A.C.A. 1939 (now A.R.S. § 12–1802), which prohibited the use of injunction to prevent the execution of a public statute by officers of the law.[7] The *McCluskey* court's answer was that plaintiffs were not seeking to enjoin the assessing or equalizing of their property in accordance with the applicable statutes, but rather the plaintiffs were seeking to require the officials to comply with the statutes and Constitutions of Arizona and the United States. 80 Ariz. at 20, 291 P.2d at 794.

Thus the Supreme Court in McCluskey v. Sparks, supra, enjoined the discriminatory undervaluation of property because the only remedy available to the taxpayer was to have the superior court determine the full cash value of the dissatisfied taxpayer's property without any possibility of equalizing the assessments on all properties, which thereby compounded this discrimination and injury by forcing the taxpayer who brought the suit to pay an even higher tax.

A most significant case decided by the Arizona Supreme Court involving Arizona's taxing procedures is Southern Pacific Company v. Cochise County (1963) 92 Ariz. 395, 377 P.2d 770, which is heavily relied upon by the present plaintiffs. It was in this case that the high court not only enjoined the discriminatory assessment practices of the counties but also stated that in the future, any tax discriminatorily assessed and paid under protest would be refundable to the

---

7. Section 26–104, A.C.A.1939, is relevant because of its similarity to A.R.S. § 42–204, subsec. B., which is pertinent to this present case and which prohibits enjoining a public official from collect-

ing any tax imposed or levied. At the time of the *McCluskey* decision, A.C.A. 1939, § 73–841, which was the forerunner of A.R.S. § 42–204, was not cited by the taxing authorities.

taxpayer.[8] It was this ruling of the Arizona Supreme Court which apparently motivated the Arizona Legislature to enact the tax law now being challenged in this Court.

In its 1963 case, a present plaintiff, Southern Pacific Company, offered to show that its property was assessed at not less than 89 percent of its full cash value while other property subject to assessment by the respective county assessors was assessed at no more than 20 percent of full cash value on the average. Southern Pacific Company v. Cochise County (1963) 92 Ariz. at 398, 377 P.2d at 772. Southern Pacific appeared before the State Board of Equalization requesting an equalization of their assessment by either a lowering of their assessment to the average of other properties, or by raising all assessments, including theirs, to full value. 92 Ariz. at 398, 377 P.2d at 772. When their request was denied, the Company paid the assessed taxes under protest and commenced an action to recover the taxes for the first one-half of the fiscal year of 1959 and to enjoin future discriminatory assessments arising from the alleged systematic under-valuation practices of the counties and tax commission. 92 Ariz. at 397, 377 P.2d at 772.

The same statutes were in effect at the time of the *Southern Pacific* case as at the time of the 1955 *McCluskey* case; only the numbers were changed by later legislative acts. Therefore, as far as the injunction was concerned, the *Southern Pacific* case was merely a play-back and affirmation of the *McCluskey* case.

A.R.S. § 42–146 allowed the taxpayer to appeal the assessment fixed by the State Tax Commission to the superior court after he had paid the tax assessed. A.R.S. § 42–147 allowed the court to determine only the full cash value of the property and,

"If the court finds that the assessment is excessive, the court shall find the full cash value of the property and render judgment for appellant and against the county. If the court finds the assessment represents the full cash value of the property, the action shall be dismissed with costs against appellant. If the court finds the assessment is below the full cash value of the property, the judgment shall be for the county and against appellant for the costs of the appeal and the taxes due on the property as if it had been originally assessed at its full cash value." A.R.S. § 42–147, subd. C. (Formerly A.C.A.1939, § 73–110).

Thus the court came to the same conclusion in *Southern Pacific* as it had in *McCluskey:*

"In the statutory appeal the superior court is only authorized to raise appellant's assessment from 89 per cent of full cash value to 100 per cent, an existing difference admitted by appellant. Such a judgment would not only perpetuate but would increase the existing inequality of which appellant complains." 92 Ariz. at 399, 377 P.2d at 773.

The Supreme Court in the *Southern Pacific* case specifically stated:

"Hence, unless or until the legislature exercised its authority and establishes classifications of property which permit an assessment at a different percentage of full cash value, courts have no alternative other than to prohibit officials from assessing appellant's properties at a different percentage of full cash value from other properties."[9] 92 Ariz. at 403, 377 P.2d at 776.

8. The portion of the Southern Pacific Company v. Cochise County, supra, decision, which deals with and rejects the refunding of the tax paid by the company for the first one-half of fiscal year 1959 is discussed infra at page 583.

9. This statement by the Arizona Supreme Court was the prime stimulant for the enactment of the tax legislation presently being challenged in this Court.

Though the defendant counties sought to invoke A.R.S. § 42–204, subd. B.,[10] which prohibited issuing an injunction to enjoin the collection of any tax, the Supreme Court issued an injunction saying:

"Appellant, however, does not seek to prohibit or enjoin the collection of a tax. It seeks to enjoin the Commission and the County Assessors in the future from assessing appellant's properties in an amount in excess of the percentage of the full cash value at which other properties are assessed or in the alternative to compel in the future the assessment of all properties at full cash value. Appellant is seeking to compel the taxing officials to comply with the statutes but if unable to strictly comply therewith to cease using the power of public office as the means to discriminate against it." Southern Pacific Company v. Cochise County (1963) 92 Ariz. 395, 402, 377 P.2d 770, 775.

In the third case, Bade v. Drachman (1966) 4 Ariz.App. 55, 417 P.2d 689, count I of the complaint[11] alleged:

" * * * that the intentional and systematic assessment for tax purposes of realty at 12½ percent of full cash value and of improvements at 23 percent of full cash value was illegal and violative of constitutional and legislative mandates, * * *." 4 Ariz. App. at 58, 417 P.2d at 692.

The trial court found for the plaintiffs on their motion for summary judgment and granted injunctive relief, by

" * * * enjoining the defendants from extending on either the 1963 tax roll or the 1963 assessment roll a valuation for the subject improvements in any amount greater than 12½ percent * * *, and from collecting taxes against the improvements based upon any assessment greater than

12½ per cent * * *." 4 Ariz.App. at 58, 417 P.2d at 692.

The Court of Appeals reversed the count I summary judgment because it believed the factual issue, in what amount plaintiffs were injured by the unlawful practices of the defendants, had not been resolved. 4 Ariz.App. at 65, 417 P.2d at 699. While setting aside the summary judgment, the appellate court did not find fault with the granting of the injunction itself. On the appeal to the Court of Appeals, the defendants raised six questions, but only the first three are pertinent to our consideration of the injunction:

"1. Under existing constitutional and statutory provisions is it lawful for a county assessor to systematically and intentionally value one class of property for tax purposes at a certain percentage of its cash value and to value another class of property at a lower percentage?

"2. Did the trial court err in granting injunctive relief for the reason that the taxpayer had an adequate remedy at law?

"3. Did the trial court err in granting equitable relief in that such relief was in violation of A.R.S. § 42–204, either as it existed prior to March 26, 1964, or as amended effective after that date?" Bade v. Drachman (1966) 4 Ariz.App. at 58–59, 417 P.2d at 692.

The appellate court answered "no" to these three questions.

In answering the first question the appellate court cited several statutes (A.R.S. §§ 42–123, 42–143, 42–147, 42–221, 42–227, 42–238, 42–762, and 11–542), the import of which was to require all property to be assessed at full cash value. The court also cited Southern Pacific Company v. Cochise County, supra, as holding that there is a

10. "No injunction shall issue in any action or proceeding in any court against the state or against any county, municipality or officer thereof, to prevent or enjoin the collection of any tax imposed or levied." A.R.S. § 42–204, subsec. B. (This statute was amended in 1964).

11. The complaint was filed in 1963, before the amendment of A.R.S. § 42–204.

" 'general legislative scheme that assessments on all species of property shall be at full cash value.' ˘ (92 Ariz. 401, 377 P.2d 774)." 4 Ariz.App. at 60, 417 P.2d at 694.

To answer the second question raised on appeal of the *Bade* case concerning whether or not plaintiffs had an adequate remedy at law under A.R.S. §§ 42–146 and 42–147 or under A.R.S. § 42–245, the appellate court relied upon the holdings and reasoning of McCluskey v. Sparks, supra, and Southern Pacific Company v. Cochise County, supra, which had found the remedy given by the predecessors of these statutes to be inadequate. 4 Ariz.App. at 61, 417 P.2d at 695.

However, the *Bade* court had more difficulty with defendants' contention that A.R.S. § 42–204, subsec. C.,[12] afforded the plaintiffs an adequate remedy at law. The appellate court did not give a forthright answer, but did imply that the remedy was inadequate when it said:[13]

"McCluskey held categorically that 'the plaintiffs have no adequate remedy at law.' (80 Ariz. 21, 291 P.2d 794). Whether the inadequacy of the remedy provided by A.R.S. § 42–204, subsec. C arises by reason of the uncertainties of recovery, or by virtue of the inadequacy deemed by our Supreme Court to be inherent in any requirement that a taxpayer pay taxes resulting from intentional discrimina-

tory practices before he may be heard to complain of such practices, we need not decide. Suffice it to say, we believe that the trial court was authorized under the McCluskey and Southern Pacific decisions to grant injunctive relief." Bade v. Drachman (1966) 4 Ariz.App. 55, 61, 417 P.2d 689, 695.

█ In summary then it can be said that the three cases just discussed— (*McCluskey, Southern Pacific Company,* and *Bade*)—establish the proposition that where the statutes in effect at the time of the action require that assessments on all species of property shall be at full cash value, and where there is intentional systematic discrimination in the undervaluation of like or similar property and where the only statutory relief available to the taxpayer is to have a court determine the actual cash value and increase the taxpayer's assessment accordingly, thereby compounding the discrimination and injustice, the Arizona courts will enjoin the discriminatory assessments.

The latest pronouncement by the Arizona courts, and the fourth case being considered in this analysis of remedies at law available to a taxpayer, is made in Drachman v. Jay (1966) 4 Ariz.App. 70, 417 P.2d 704, review denied October 25, 1966. In this case the plaintiffs challenged the constitutionality of A.R. S. § 42–204, as amended, which is set forth below.[14]

12. "After payment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax due is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this chapter." A.R.S. § 42–204, subsec. C.

13. In striking contrast it should be noted that in Drachman v. Jay (1966) 4 Ariz. App. 70, 417 P.2d 704 (handed down on the same day as Bade v. Drachman, supra, and decided by the same judges) it was held that A.R.S. § 42–204, subsec. C., afforded an adequate remedy to the taxpayers who were challenging the constitutionality of A.R.S. § 42–204, as amended. The grounds for this challenge by the plaintiff taxpayers was that

the amendment to the statute prohibiting an injunction to enjoin the extending of assessments upon the tax rolls as well as the collecting of taxes deprived them of all rights to relief.

14. " § 42–204. Payment of tax as prerequisite to testing validity thereof; injunctive relief prohibited; refunds
A. Any person upon whom a tax has been imposed or levied under any law relating to taxation shall not be permitted to test the validity *or amount* thereof, either as plaintiff or defendant, unless the tax is first paid to the county treasurer authorized to collect the tax, together with all penalties thereon.
B. No injunction shall issue in any

Plaintiffs in the *Jay* case were appealing from an order of the superior court dissolving a temporary restraining order and denying a petition for preliminary injunction to enjoin Pima County assessing officials from extending assessments of plaintiffs' realty improvements on the 1964 assessment rolls and tax rolls at more than twelve and one-half per cent of the full cash value. 4 Ariz.App. at 71, 417 P.2d at 705. The Appellate Court noted that in Bade v. Drachman, supra, (which was released simultaneously with Drachman v. Jay, supra) the plaintiffs received an injunction in a like suit with regard to their *1963* taxes. 4 Ariz.App. at 71, 417 P.2d at 705. However, the same judges that decided the *Bade* case would not grant the injunction with regard to the *1964* taxes in the *Jay* case because the Legislature of Arizona had, in the meantime, amended A.R.S. § 42–204 by prohibiting the enjoining of the county officials from extending upon the tax rolls any assessment made for any tax purpose.

Plaintiffs in the *Jay* suit contended that the effect of the statute was to extinguish all right to relief. Their contention was predicated primarily upon McCluskey v. Sparks, supra, and Southern Pacific Company v. Cochise County, supra, which, as we have seen, held that the taxpayer did not have an adequate remedy at law and, therefore, was entitled to injunctive relief. The Arizona Court of Appeals answered plaintiffs by stating that the constitutionality of statutes denying injunctive relief against illegal or excessive taxes have been upheld (4 Ariz.App. at p. 74, 417 P.2d at 708) where there was some existing remedy for the enforcement of the right of the taxpayer to be free from discriminatory assessments (4 Ariz.App. at p. 75, 417 P.2d at 709). After citing Southern Pa-

cific Company v. Cochise County, supra, to the effect that from the date of that case (*Southern Pacific*) the taxpayer would be permitted to follow statutory remedies for the recovery of taxes occasioned by the misapplication of the law by taxing authorities, the Court of Appeals held the amendment constitutional, saying:

"We believe that under these various pronouncements of our Supreme Court, taxes collected upon assessments which are discriminatorily excessive by reason of systematic and intentional practices are 'illegally collected'; and, if paid under protest, may be recovered under A.R.S. § 42–204, subsec. C. In so holding, we reject the plaintiffs' contention that the often-reiterated requirement for equitable relief, that there be 'no adequate remedy at law,' is the same as that for declaring a statute such as the one under discussion unconstitutional." Jay v. Drachman (1966) 4 Ariz.App. at 75, 417 P.2d at 709.

The court went on to say in a very interesting paragraph, which by inference left the door ajar for injunctive relief:

"In so holding, we do not presume to pass upon the availability of injunctive relief for complaining taxpayers seeking comprehensive equitable relief to correct an entire tax structure founded upon discriminatory assessing practices, as has been granted in other states." 4 Ariz.App. at 76, 417 P.2d at 710.

In summary, then, this analysis of these four cases provides a basis for a better understanding of the evolution of the taxpayers' remedies, both legal and equitable, as these were developed by the decisions of the state courts, and thereby gives an appreciation of the impact

---

action or proceeding in any court against the state *or an officer thereof,* or against any county, municipality or officer thereof, to prevent or enjoin *the extending upon the tax roll of any assessment made for tax purposes or* the collection of any tax imposed or levied.

C. After payment of the tax, an action may be maintained to recover any tax illegally collected, and if the tax *due* is determined to be less than the amount paid, the excess shall be refunded in the manner provided by this chapter." (All italicized words were added by the 1964 amendment).

these decisions had on the state legislators leading to the enactment by them of the tax legislation attacked in this case by the present plaintiffs.

### ANALYSIS OF PLAINTIFFS' ALLEGATIONS

*Whom to Sue:*

Of the several questions raised by plaintiffs in their opposition to the defendants' motion to dismiss, the first is, "Whom do we sue?"

In their oral argument and in their brief in opposition to defendants' motion (pp. 5–7) plaintiffs stated that the cases of County of Maricopa v. Hodgin (1935) 46 Ariz. 247, 50 P.2d 15, 101 A.L.R. 793; Riggins v. County of Maricopa (1943) 60 Ariz. 168, 133 P.2d 759; and Cochise County v. Southern Pacific Company (1966) 99 Ariz. 385, 409 P.2d 549; were irreconcilable as to who was the proper party to sue for a tax refund.

County of Maricopa v. Hodgin, supra, was an action by a World War I veteran named Hodgin for a refund of taxes paid under protest on property which was exempt from taxation because of an Arizona constitutional provision providing an exemption for veterans. The case does not say who the named defendants were, but it does state that

" * * * Maricopa County, its board of supervisors, and treasurer, have appealed." 46 Ariz. 247, 248, 50 P.2d 15, 16.

The lower court found for Hodgin and ordered the county treasurer to pay the judgment. The defendants contended that the lower court erred in granting judgment against the county treasurer for the full amount of the tax collected. The defendants further contended that

the taxpayer had to bring an action against each political subdivision that received a portion of the tax paid. The Arizona Supreme Court rejected these contentions. After considering the statute [15] which was the forerunner of the present A.R.S. § 42–204, the Supreme Court held that the county treasurer was designated by the law as suable for the refund and concluded:

" * * * the tax having been collected by the county, the action is maintainable against the county for the recovery of the whole tax, and that the taxpayer is not required to pursue the different tax units to which some of the tax may have been apportioned and paid." County of Maricopa v. Hodgin (1935) 46 Ariz. 247, 251, 50 P.2d 15, 16.

It is clear from the *Hodgin* case that

" * * * the tax unit *or its officer* against whom no injunction for the collection of any tax shall run is the tax unit, * * * designated by law as suable * * *." County of Maricopa v. Hodgin (1935) 46 Ariz. 247, 251, 50 P.2d 15, 16.

In the later case of Valley National Bank v. Apache County (1941) 57 Ariz. 459, 114 P.2d 883, the plaintiff bank brought an action to recover taxes paid under protest on a valuation of its stock which was in excess of the actual value of its stock. The action was brought under the provisions of Section 73–841, A.C.A.1939, which is substantially the same as the present A.R.S. § 42–204, subsec. C.

The State Board of Equalization had set the value of the stock at $880,448.01, but then had apportioned $1,086,154.00 to the counties, which amount was more

---

15. "No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided." Section 55, Chapter 103, Laws 1931.

than $200,000.00 in excess of the assessed value. 57 Ariz. at 463, 114 P.2d at 884. In deciding the case, the Supreme Court construed Section 73–206, A.C.A.1939, which provided that the assessment of the bank was to be on the full cash value of its stock and that the tax was to be apportioned between the counties in proportion to the assets of the bank located in the county to the total assets of the bank, but in no event was the assessment to be less than the value of the bank's property in the county. The construction given to the statute was that the apportionment to the counties could not exceed the total cash value of the bank's stock.

The Supreme Court held that the bank had chosen the proper remedy to challenge the legality of Section 73–206, A.C.A.1939, by paying the tax under protest and suing for a refund. The court also held that the apportionment being illegal and the bank having paid an excessive tax under protest, it was entitled to recover from the counties the excess taxes under the provisions of what is now A.R.S. § 42–204. 57 Ariz. at 472, 114 P.2d at 888.

Plaintiffs contend that Riggins v. County of Maricopa (1943) 60 Ariz. 168, 133 P.2d 759, clouded the clear statements made by the Arizona Supreme Court in the *Hodgin* decision that the collecting tax unit or its officer was the proper party to sue. To a limited extent we must agree with the plaintiffs. However, our analysis of Chapter 47, Session Laws of 1939,[16] and the *Riggins* opinion leads this Court to believe that *Riggins* does not impair the clear pronouncements of the *Hodgin* decision.

Mr. Riggins sought to recover from the County of Maricopa, the county assessor and the county treasurer, the vehicle privilege license tax (quoted in footnote 16) which had been paid before the tax was declared unconstitutional. The trial court denied plaintiff Riggins any relief and dismissed his complaint. Mr. Riggins based his appeal upon the Arizona Supreme Court's decision in County of Maricopa v. Hodgin, supra. 60 Ariz. at 169, 133 P.2d at 760. The Riggins court said,

"In the Hodgin case we held that a tax unit, such as a county or one of its officers, that has collected a tax on

---

16. The pertinent sections are:
"Sec. 1635e. DETERMINATION OF VALUE OF VEHICLES OPERATING AS COMMON CARRIERS.
"2. * * * * *
(b) A motor vehicle, trailer, or semi-trailer operated in this state in interstate commerce shall be assessed by the vehicle superintendent at such proportion of the prima facie full cash value as the whole number of miles traveled by the vehicle in this state bears to the length of route or routes designated by the corporation commission in this state shall bear to the total length of established route or routes in all states over which such motor vehicle, trailer or semi-trailer usually operates; provided, however, upon presentation of proof of assignment of a motor vehicle, trailer or semi-trailer to operate over a specific route or routes, the length of such route or routes shall be the basis for apportionment hereunder. In all other cases, such mileage shall be estimated in accordance with rules prescribed by the superintendent. The tax-

es collected under this subsection shall be paid to the county assessor of the county in which * * * its principal office in this state is located." Section 5, Chapter 47, Session Laws of 1939.
"Sec. 1635g. DISTRIBUTION OF TAX.
(a) Taxes collected under the provisions of subsection (b), section 1635e, shall be transmitted to the state treasurer, through the state auditor, for the credit of the general fund. From all other license taxes collected under the provisions of this act the county assessor shall transmit to the state treasurer, through the state auditor, for the credit of the general fund, an amount equal to one-fourth cent on each dollar of the full cash value of the vehicle, together with a statement showing the total assessed value of the vehicles assessed, the total amount of taxes collected, the amount of taxes remitted to the state and the amount retained for county and city purposes. * * * *"
Section 7, Chapter 47, Session Laws of 1939.

property exempt under the constitution, is a proper party defendant in an action to recover such tax, even though it may have been collected for different tax units and distributed to them." Riggins v. County of Maricopa (1943) 60 Ariz. 168, 169, 133 P.2d 759, 760.

The Riggins court then proceeded to distinguish the *Hodgin* decision by saying that under Sections 5 [1635e, subd. 2(b)] and 7 [1635g] of Chapter 47, Session Laws of 1939, the county was to have no control over these funds, but rather the county assessor was merely to *receive* the funds and to remit them to the state treasurer; whereas in the Hodgin situation the county collected, controlled, and distributed the tax funds. 60 Ariz. at 169, 133 P.2d at 760. The court in effect said that since the funds did not belong to the county or county assessor or any other county officer and that they had no power over the use or disposition of the funds, the county was not the "tax unit" of the *Hodgin* case but rather the state through its treasurer, who was the "legal custodian of the tax," was the suable party. 60 Ariz. at 170, 133 P.2d at 760. Considering the distinction made by the Arizona court, this Court does not believe the *Riggins* decision clouds the *Hodgin* decision.

Cochise County v. Southern Pacific Company (1966) 99 Ariz. 385, 409 P.2d 549, was an action by Southern Pacific against nine counties and the State Tax Commission (sitting as the State Board of Equalization) to collect approximately $25,000 of taxes paid under protest. The taxes had been assessed against the railroad because the State Board of Equalization had acted on incorrect information from the State Superintendent of Public Instruction relative to the

average daily student attendance in the state high schools in fixing a tax rate of $1.70 rather than $1.661 per $100.00 of assessed valuation. 99 Ariz. at 393, 409 P.2d at 551. By way of dictum, the Arizona court pointed out that the state treasurer was not a party to the suit, and implied that he should have been,[17] however, the court went on to say that other facts were decisive of the appeal. Cochise County v. Southern Pacific Company (1966) 99 Ariz. 385, 391, 409 P.2d 549, 553. In a three to two decision, the court held that the rate was not grossly excessive and that the board's action was not arbitrary or fraudulent, therefore, the levy would not be set aside. Cochise County v. Southern Pacific Company (1966) 99 Ariz. 385, 394, 409 P.2d 549, 555.

In the discussion prior to the Arizona court's statement that the state treasurer was not a party to the suit, the court analyzed the applicable statutes, A.R.S. §§ 42–301, 42–341, 15–1211 and 15–1212. In summary, these statutes required the county treasurer to be ex officio tax collector (A.R.S. § 42–341, subsec. A.,) and to keep separate and distinct accounts as ex officio tax collector and as county treasurer (A.R.S. § 42–351, subsec. C.). Furthermore, A.R.S. § 15–1212, subsec. B., provided for distribution of the funds from the state treasury by warrant to the county treasurers for credit to the county school fund.

The Arizona court observed that the surplus collected, because of the difference between the two rates, went into the general fund, and was to be used in the next year to reduce the property tax rate in accordance with A.R.S. § 42–301, subsec. B. 99 Ariz. at 389, 409 P.2d at 552. The Arizona court then proceeded to draw the same distinctions between

---

17. In his dissenting opinion, Vice Chief Justice Bernstein joined by Justice Lockwood, categorically denied that the state treasurer had to be joined as a party defendant, saying: "I must also disagree with the majority opinion that the suit should be dismissed because the state treasurer was not made a party defendant. See Maricopa County v. Arizona Citrus Land Co., 55 Ariz. 234, 100 P.2d 587 and Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770." Cochise County v. Southern Pacific Company (1966) 99 Ariz. at 398, 409 P.2d at 558.

the duties of the county treasurers under the statutes considered in this case (Cochise County v. Southern Pacific Company, supra.) and the duties of the county treasurers under the statutes considered in the *Hodgin* case as it had done between the *Hodgin* and *Riggins* cases. In so doing, the court noted in the *Cochise County* case that under the statutes being considered, as was true in the *Riggins* case, the counties did not receive or control any part of the money because it was collected by the county treasurer as ex officio state tax collector, kept in a separate and official account, and remitted to the state treasurer. 99 Ariz. at 390, 409 P.2d at 552.

There is no doubt that the distinction made by the Arizona court between the property tax of taxpayer Hodgin and the vehicle license privilege tax of taxpayer Riggins is clearer than the distinction between the property tax of taxpayer Hodgin and the property tax of taxpayer Southern Pacific. Nevertheless, the Arizona court has found a distinction, however nebulous the distinction may be, based upon the right to control the use and allocation of the funds collected.

This distinction, however, should not pose an insurmountable problem to the present plaintiffs in challenging the constitutionality of Arizona's new property classification law (A.R.S. § 42–136) or assessed valuation law (A.R.S. § 42–227) in the state courts. The complaint in the present action before this Court has named the State Tax Commission and the boards of supervisors, assessors, and treasurers of fourteen counties. Plaintiffs could easily add the State Treasurer to any action brought in the state courts. Having added all possible defendants, the state courts thereafter could eliminate any parties not necessary to a determination of the issues.

*What Is An Illegal Tax?:*

Plaintiffs in their opposition to the motion to dismiss, state they are uncertain as to what constitutes an "illegally collected" tax. They contend that no refund would be given by the taxing authorities unless fraud or bad faith on the part of the taxing authorities could be shown.

Plaintiffs base their allegation on Cochise County v. Southern Pacific Company (1966) 99 Ariz. 385, 409 P.2d 549.

The facts of that case are very different from the facts in this case. In the *Cochise* case the plaintiffs at no time objected to the method of determining the average daily high school attendance by the Superintendent of Public Instruction, as certified to the State Board of Equalization. 99 Ariz. at 398, 409 P.2d at 552. The court impliedly held that where the tax statute itself was not being challenged but merely the discretionary act or judgment of the State Board of Equalization in not verifying the figure certified to it by the Superintendent of Public Instruction, the court would not set aside the levy in the absence of fraud or bad faith, neither of which were shown. 99 Ariz. at 393, 409 P.2d at 555.

In the present case, the plaintiffs challenge the legality of the tax statute itself. Arizona's courts have already ruled that where, "[t]he action is to test the legality of the tax and if found illegal the tax collected would be considered 'illegally collected.'" Maricopa County v. North Phoenix Baptist Church (1966) 2 Ariz.App. 418, 420, 409 P.2d 577, 579, review denied Feb. 23, 1966.

The *North Phoenix Baptist Church* case was a suit by the church under the provisions of A.R.S. § 42–204 to recover property taxes it had paid under protest. The Arizona Court of Appeals found the tax to be contrary to the religious exemption of the Arizona Constitution and statutes, therefore, it was illegally collected and, therefore, it was to be refunded by the county. Since the Supreme Court of Arizona denied review of Maricopa County v. North Phoenix Baptist Church, supra, after it had handed down its decision in Cochise County v. Southern Pacific Company, supra, we must assume that *North Phoe-*

*nix Baptist Church* reflects the current Arizona law relative to "illegally collected" taxes and their refund. Thus, if the tax legislation challenged by the plaintiffs is found to be unconstitutional as the plaintiffs contend that it is, there is no reason to believe that the Arizona courts would fail to follow their own pronouncements and allow a refund.

*Will Statute Be Given Effect?:*

Plaintiffs next allege that A.R.S. § 42–204, the statute providing for a refund of taxes illegally collected, will not be given effect. Plaintiffs' primary basis for this allegation is Southern Pacific Company v. Cochise County (1963) 92 Ariz. 395, 377 P.2d 770, wherein the plaintiff Southern Pacific Company, in a three count complaint, unsuccessfully sought to recover taxes paid under protest for the first half of the fiscal year 1959 and to enjoin future discriminatory assessments.[18]

In support of the first two counts of Southern Pacific's complaint, the company showed that it had appeared before the State Board of Equalization and objected to the value of its property as assessed, stating that it was discriminatory, and requested that the Board of Equalization equalize the assessment either by lowering the company's assessment to the average of other properties or raising other property assessments to their full cash value.

The Arizona Supreme Court granted the injunctive relief as to future taxes (as was discussed earlier in this opinion in the prefatory remarks concerning the enactment of Arizona's new tax law) but did not grant a refund. This failure to obtain a tax refund has convinced plaintiffs in this case that they cannot obtain a refund from the state courts even if they should prevail in their attempt to have the present tax law found unconstitutional. The facts in this case, however, are very different from the facts in the Southern Pacific Company v. Cochise County, supra.

In the *Southern Pacific* case, the railroad challenged the county assessors' long standing practice of assessing the railroad's property at not less than 89 percent of full cash value while assessing other property at no more than 20 percent of their full cash value on the average. 92 Ariz. at 398, 377 P.2d at 772. The practice of discriminating against the railroad had been in vogue for some sixty years [Cochise County v. Southern Pacific Company (1966) 99 Ariz. 385, 398, 409 P.2d 549, 558] but this case (Southern Pacific Company v. Cochise County, supra.) was the first time the railroad had challenged the discriminating practice in the courts. The railroad in seeking to have its assessment lowered to that of other property in the county was in effect suing for a 77 percent refund (92 Ariz. at 403, 377 P.2d at 776) or $1,281,957.60.[19]

The Arizona Supreme Court took judicial notice that the taxing subdivisions of the State had long predicated their fiscal affairs upon their discriminatory practices against the railroad and further stated that the refund sought by the railroad, together with other similar claims, threatened the financial solvency of many taxing units of the State. Southern Pacific Company v. Cochise County (1963) 92 Ariz. at 406, 377 P.2d at 778.

In effect, the Supreme Court held that where the repeated objections and protests of the railroad were at best "perfunctory" (92 Ariz. at 407, 377 P.2d at

---

18. The third count, for a refund of $25,000 paid because of an error by the state superintendent of public instruction in certifying the average daily attendance of high school students to the State Tax Commission, was decided against the railroad in Cochise County v. Southern Pacific Company (1966) 99 Ariz. 385, 409 P.2d 549.

19. None of the cases cited to this Court revealed the amount of money sought by the railroad as a refund. However, on page 3 of plaintiffs' memorandum in support of their motion for a preliminary injunction, plaintiff stated it had paid $1,664,880 under protest as its first one half of the 1959 fiscal year, and we have no cause to dispute this figure.

778) and where the neglect of the railroad in not pursuing its available remedy results in great economic hardship threatening the existence of the government itself (92 Ariz. at 407, 377 P.2d at 778), the court will not grant a refund but instead will enjoin the discriminatory practice prospectively (92 Ariz. at 406, 377 P.2d at 778).

Under the facts of Southern Pacific Company v. Cochise County, supra, the state court's action seems reaaonable. However, the reasonableness of the *Southern Pacific Company* case notwithstanding, the facts of the present case, relative to whether the state courts would grant a refund, are much more attuned to those in Maricopa County v. North Phoenix Baptist Church (1966) 2 Ariz.App. 418, 409 P.2d 577, and Bade v. Drachman (1966) 4 Ariz.App. 55, 417 P.2d 689.

*North Phoenix Baptist Church* has already been commented on and as was shown, the church received a refund of an "illegally collected" tax when the church promptly availed itself of the provisions of A.R.S. § 42–204.

The *Bade* case was more complex than Maricopa County v. North Phoenix Baptist Church, supra. In *Bade*, the plaintiffs, who owned a large shopping center complex in Tucson, Arizona, alleged:

1. " * * * that the intentional and systematic assessment for tax purposes of realty at 12½ percent of full cash value and of improvements at 23 percent of full cash value was illegal and violative of constitutional and legislative mandates."

2. " * * * that the method used by the Assessor to determine full cash value of improvements was illegal in that construction costs less depreciation is not equivalent to full cash value as defined by applicable statutes and that this arbitrary method of determining value discriminated against plaintiffs' particular improvements."

Bade v. Drachman (1966) 4 Ariz. App. at 58, 417 P.2d at 692.

The lower court granted final judgment on both counts in favor of the plaintiffs. The lower court found that the defendants had intentionally and systematically assessed property in Pima County by use of a discriminatory percentage of full cash value and that full cash value was determined by a systematic and intentional use of a discriminatory method of valuation (cost less depreciation). 4 Ariz. at 58, 417 P.2d at 692.

The Court of Appeals of Arizona affirmed the lower court's injunction in *Bade*. The appellate court also affirmed the principle of a refund under the provisions of A.R.S. § 42–204, but reversed and remanded because of the trial court's method of computing the value of the subject property (4 Ariz.App. at 67, 417 P.2d at 701) and because of the trial court's lowering of the assessment of the improvements to 12½ percent of full cash value in granting plaintiffs' motion for summary judgment (4 Ariz. App. at 65, 417 P.2d at 699).

Judge Molloy's discussion in the *Bade* case of whether or not A.R.S. § 42–204 prohibits equitable injunctive relief [20] is not in point for the case now under consideration. Plaintiffs' present contention is that A.R.S. § 42–204 will not be given effect and not whether or not the remedy afforded the taxpayer by the statute is so inadequate as to allow an injunction. Therefore, since the statute was given effect, Bade v. Drachman, supra, does not support plaintiffs' contention.

*Efficient Remedy—How To Collect A Judgment:*

Plaintiffs' fourth attack on the "plain" remedy requirement of 28 U.S.C. § 1341 concerns their uncertainty as to the method of collecting any judgment they might receive in the state courts. The same idea was propounded in plaintiffs' allegation that there is no "effi-

20. See page 577 of this opinion for Judge Molloy's exact words.

cient" remedy because the Arizona statutes make no provision for the payment of judgments rendered against the State. The two allegations will be considered as one.

In the early case of County of Maricopa v. Hodgin (1935) 46 Ariz. 247, 50 P. 2d 15, 101 A.L.R. 793, the lower court had given judgment to the plaintiff,

" * * * ordering and directing the county treasurer of Maricopa County to repay or return said taxes, * * *, forthwith in cash." 46 Ariz. at 248, 50 P.2d at 15.

This judgment was given under the provisions of Section 55, Chapter 103, Laws 1931,[21] which for our purposes is the same as A.R.S. § 42–204. While upholding the refund, the Arizona Supreme Court altered the method of payment. The high court held that the refund judgment was to be in the same manner as other judgments against the county. The Hodgin court also said:

"When a judgment is rendered against a county, it is the duty of the board of supervisors to apply funds in the treasury of the county not otherwise appropriated to its payment, or, if there are no such funds, it is its duty to budget the judgment as a county expense and levy a tax to pay it." 46 Ariz. at 257, 50 P.2d at 19.

The defendants in their Citation of Authority On Which Defendants Intend To Rely, filed on May 24, 1968, pointed out that sections 42–353 and 42–204 are in the same chapter of the Arizona Revised Statutes. A.R.S. § 42–204, subsec. C, refers to the tax being "refunded in the manner provided by this chapter." A.R.S. § 42–353 states:

"When a tax has been set aside as invalid, or when money has been refunded to the taxpayer as a double or erroneous assessment, or refunded to the purchaser of real estate erroneously sold, the proportion thereof which has been paid to the state treasurer shall be refunded to the county. On the next settlement thereafter, the county treasurer of the county shall be credited therewith by the state treasurer."

By thus coupling section 42–353, which makes provisions for reimbursement of the county for the state's share of any erroneous assessment, with the statements of the Arizona Supreme Court in its Hodgin decision, relative to the county paying the refund with funds not otherwise appropriated or budgeted for the refund, this Court is satisfied that the plaintiffs have an "efficient" remedy under Arizona law for collecting any judgment it may receive. It should be added that the defendants, in their Citation of Authority On Which Defendants Intend To Rely, represented to this Court that the judgment for the full amount of taxes paid by the plaintiff in Maricopa County v. North Phoenix Baptist Church, supra, was submitted as a claim against the county and was promptly paid.

As a corollary to their allegation that the Arizona statutes make no provision for the payment of refund judgments against the State or its political subdivisions, the plaintiffs contend that they would have to pay a part of their own judgment.[22] Plaintiffs' position is that if, for example, they were taxed at a 50% rate for the year 1967 when their fair rate was only 30% and they received a judgment for the 20% excess, then the total taxes raised in 1968 would have to be increased by the amount of the judgment received by the plaintiff for the 20% excess paid in 1967. Plaintiffs then reason that their property would also have to be taxed in 1968 to pay for the judgment and if taxed at a 30% rate, they would in effect be paying 30% of their own judgment.

 Two answers to plaintiffs' corollary allegation were given to this Court. At oral argument, defendants

---

21. See footnote 15, supra.

22. "Points And Authorities On Behalf of Plaintiffs In Opposition To Motion To Dismiss For Lack Of Jurisdiction," filed May 23, 1968, pp. 13–15.

stated that the tax base of the State and its political subdivision is so broad and diversified that it would be premature to determine at this time that the succeeding year's taxes paid by the plaintiffs would have to be increased in order to pay any refund judgment it may receive. The broadness and diversity of the tax base of the State and its political subdivision is of such common knowledge and notoriety in this jurisdiction that we can take judicial notice of such fact. Also, we concur in defendants' argument that it would be premature to determine at this time that plaintiffs' succeeding year's taxes would have to be increased to pay plaintiffs' own refund judgment.

The second argument made in refuting plaintiffs' corollary allegation is based upon Wyandotte Chemical Corp. v. City of Wyandotte (6th Cir. 1963) 321 F.2d 927. The Wyandotte Chemical Corporation presented the same argument, among others, as plaintiffs in this action have presented. The lower court in Wyandotte Chemical Corp. v. City of Wyandotte (D.C.E.D.1961) 199 F.Supp. 582, determined that the Chemical Corporation's taxes would have to be increased in succeeding years in order to pay any refund judgment and the corporation having a tax rate of 38% would be paying 38% of its own judgment. The lower court then held that such a situation as the Chemical Corporation's, rendered the remedies at law inadequate and the court granted injunctive relief to the corporation.

■ However, on appeal, the United States Court of Appeals, Sixth Circuit, reversed the lower court. Wyandotte Chemical Corp. v. City of Wyandotte (6th Cir. 1963) 321 F.2d 927. We concur in the statement made by the Circuit Court in its reversal of the lower court in the *Wyandotte* case.

"The district judge is also concerned that the plaintiff would have to pay thirty-eight percent of a new levy. In other words, it would pay thirty-eight percent of its own judgment. The new levy would be on the assessed value of the property according to the reassessment. In this respect the plaintiff would be in the same position as any other taxpayer. Any judgment against a city from whatever source it arises if paid by a new or additional levy by the city must be borne by all of the taxpayers of the city. If a resident taxpayer is the owner of the judgment his property is subjected to the additional levy and he must bear his proportionate share of the increase to pay his own judgment." 321 F.2d at 930.

The plaintiffs' corollary allegation of having to pay its own judgment is thus disposed of by either of the two answers above set forth and, therefore, the plaintiffs have failed to show that they do not have an "efficient" state remedy available to them.

*Speedy State Court Remedy:*

The last allegation by plaintiffs to be considered in this opinion is that there is no "speedy" state remedy because of the backlog of cases in the state courts.

■ This Court takes judicial notice of the inherent power and statutory authority of both the superior courts and appellate courts of the State of Arizona to advance on their calendars actions which are of great importance to the public.

The statutory power of the state courts is set forth in Title 12, Chapter 7, Article 7 of the Arizona Revised Statutes entitled, "Stay of Proceedings Under Statute or Order Claimed Unconstitutional." The two sections [23] contained

23. "12–931. Proceeding in state court; stay, hearing and precedence of appeal

A. When a proceeding is begun in a court in this state for the purpose of enforcing a statute of the state or an ad-

ministrative order of a board, commission, or other agency of the state, and in defense thereto the assertion is made that the statute or administrative order is unconstitutional and invalid, the court in which the defensive proceeding is begun

in Article 7 state that precedence "shall" be given by the state courts where the constitutionality of a statute or administrative order is challenged. Since the plaintiffs in the action before this Court are challenging the constitutionality of the new tax legislation, it is obvious that these sections would be invoked, particularly section 12–932, subsec. C.

The inherent power of Arizona Courts is shown in a law review article by the then Chief Justice of the Supreme Court of Arizona, and now Vice Chief Justice of that Court, Charles C. Bernstein, discussing the preference and advancement of civil cases which are of "general public interest." [24] The Chief Justice stated that Rule 2 [25] of the Rules of the Supreme Court indicated that civil cases of general public interest are to be given preference. 5 Arizona Law Review 175, 185.

The precedence is given upon motion of counsel. Chief Bernstein went on to say:

"The decision as to whether a particular case is of general public interest is based upon a showing that the decision will affect the interests of a substantial segment of our citizens. Occasionally, a case will be advanced when circumstances of unusual hardship resulting from delay are shown." 5 Arizona Law Review 175, 185.

■ In the opinion of this Court, Rule 26 [26] of the Rules of the Supreme Court would also give the Supreme Court the power to grant precedence to a matter of public importance. The Rules 1 through 26 of the Supreme Court of Arizona and the Court of Appeals of Arizona are identical [17 A.R.S. (Supp.1967)], therefore, the Court of Appeals would have the same inherent power to give precedence to an important public matter case as does the Supreme Court.

Rule XVI of the Uniform Rules of Practice for the Superior Court sets forth rules relating to Maricopa County.

may grant a stay of all other proceedings under the statute or order by any state officer or officers pending determination of such defensive proceeding.
B. The defensive proceeding, and an appeal therefrom, shall be given precedence, and expedited in every way, and shall be assigned for hearing at the earliest practicable day.
§ 12–932. Proceeding in federal court; jurisdiction of state court; stay, notice and precedence of appeal
A. When an action praying for a preliminary injunction is begun in a federal district court to restrain an official or officials of this state from enforcing or administering a statute or administrative order of this state, or to set aside or enjoin such statute or administrative order, any defendant in the action, or the attorney general of the state, may bring an action to enforce the statute or order in the superior court of the state at any time before final hearing on the application for an injunction in the action in the federal court, and jurisdiction is conferred upon the superior court of this state, and on the supreme court on appeal, to entertain such action.
B. The superior court shall, when the action is brought, grant a stay of proceedings by any state officer or officers

under such statute or order, pending determination of the action in the courts of the state and the superior court shall, upon the bringing of such action therein, at once cause a notice thereof, together with a copy of the stay order, to be filed in the federal district court in which the action was originally begun.
C. The action in the superior court, and an appeal therefrom, shall be given precedence, expedited in every way, and shall be assigned for hearing at the earliest practicable day."

24. Bernstein, C., "The Disposition of Civil Appeals In the Supreme Court," 5 Arizona Law Review 175, 185, (Spring 1954).

25. "Rule 2. Certiorari to Industrial Commission; submission of issues to Court
" * * * the proceeding [Industrial Commission cases] shall be set for hearing at the next call of the calendar, and shall take precedence over all civil cases except *matters of general public interest*, * * *" 17 A.R.S. p. 6 (Emphasis added).

26. "Rule 26. Suspension of Rules
The Court may, for good cause shown and in the furtherance of justice, suspend the operation of any of these Rules in particular case." 17 A.R.S. p. 20.

Subsection (b) (1) of Rule XVI states in part,

"* * * all other cases which by reason of statute, rule or court order necessitate priority shall be given preference." 17 A.R.S. (Supp.1967).

Also, Superior Court-Local Rules-Maricopa County, Rule VII states:

"(c) Upon a proper showing of genuine hardship, any party may, by motion, apply for a preference for pretrial and trial.

"(d) All cases entitled to a preference for trial by reason of statute, rule or order of Court shall be set for pretrial at the earliest practicable date." 17 A.R.S. (Supp.1967).

Rule XXIX of Superior Court-Local Rules-Maricopa County gives the court authority to suspend any of its rules when in the court's discretion harm or injustice would otherwise result.[27]

■ Considering all of these rules and statutes, it is apparent that the courts of Arizona have sufficient power and authority to hear the present case as a preferential, priority case. That the Arizona courts have utilized the priority procedure is not in doubt. In the case of Arizona v. Southern Pacific Company, CA–Civ. 690 (Div. 1, filed Sept. 8, 1967) a motion for precedence was filed on February 26, 1968, granted on March 8, 1968 and argument was had on May 22, 1968.[28] The law review article discussing preference or advancement in 5 Arizona Law Review, 175, 185 by Justice Bernstein states that precedence procedures are accepted and utilized by the Arizona courts and plaintiffs have cited no authority to the contrary. Further, defendants stated to this Court at oral argument that they will join with the plaintiffs in stipulating to the great public importance of the case and in urging and insuring prompt consideration of the case by the state courts.

In a case which is as important to the public as this case is, there can be no doubt that with the parties acting together in good faith, this case can be as expeditiously litigated in the state courts as in the federal courts.

## CONCLUSIONS

The review of the parties' briefs and the Arizona cases and statutes that we have made and the oral arguments we have heard lead us to the following conclusions:

■ The proper party to sue for a refund is the county treasurer as was stated in County of Maricopa v. Hodgin, supra.[29] However, since the majority of the Supreme Court in Southern Pacific Company v. Cochise County, supra, inferentially stated that the State Treasurer should have been a party to any action seeking the refunding of any tax completely controlled by the state, the

27. Most of the other counties have a similar rule: Cochise County's Rule XII; Coconino County's Rule XIII; Gila County's Rule IX; Mohave County's Rule XV; Navajo County's Rule X; Pima County's Rule XXV; Pinal County's Rule XV; Santa Cruz County's Rule XX; Yavapai County's Rule VII. 17 A.R.S. (Supp.1967).

28. Dates verified with the Clerk of the Arizona Court of Appeals.

29. The Arizona Supreme Court in County of Maricopa v. Hodgin (1935) 46 Ariz. 247, 50 P.2d 15, 101 A.L.R. 793, modified the lower court's order to the county treasurer to pay the taxpayer's judgment "forthwith" and "in cash." In so doing, the court noted that the refunding statutes gave the courts no authority to direct payment by the county treasurer. The court said that obedience to such an order by the county treasurer would be a direct violation of a positive statute, for he may:

"'5. Disburse the county money only on county warrants, issued by the board of supervisors, signed by the chairman and clerk of such board, or as provided by law.' Subdivisions 5, § 864, Rev. Code 1928 [this statute is now A.R.S. § 11–493, subsec. 5]." 46 Ariz. at 258, 50 P.2d at 19.

To insure that the warrant for the judgment is issued, this Court would suggest to the plaintiffs, the joining of the county boards of supervisors as defendants so that the state courts will have jurisdiction over the boards to order the signing of a warrant.

plaintiffs should join the State Treasurer and allow the Arizona Supreme Court an opportunity to clearly designate the proper party to sue.[30] In any case joining more parties as defendants than needed creates no problem that cannot be remedied by the simple subtraction of parties by court decisions.

Any tax which is collected contrary to the provision of the constitutions of Arizona or the United States is an illegally collected tax and is refundable. Valley National Bank v. Apache County, supra; Maricopa County v. North Phoenix Baptist Church, supra. Any tax collected on the basis of a discriminatory assessment is illegally collected and is refundable to the taxpayer. Southern Pacific Company v. Cochise County, supra; Bade v. Jay, supra.

If the state courts determine that the tax is illegally collected, A.R.S. § 42–204, subsec. C, will be given effect and the illegally collected tax will be refunded. County of Maricopa v. Hodgin, supra; Valley National Bank v. Apache County, supra; Southern Pacific Company v. Cochise County, supra; Maricopa County v. North Phoenix Baptist Church, supra; Bade v. Drachman, supra; Drachman v. Jay, supra.

The taxpayer may collect his judgment in the same manner as any other judgment is collected against the county or state. County of Maricopa v. Hodgin, supra; A.R.S. §§ 42–204, subsec. C, and 42–353.

The courts of Arizona have the inherent power and statutory authority to hear this case as soon as it is at issue and to give it precedence over other cases. Supreme Court Rules 2 and 26;

Court of Appeals Rules 2 and 26; Superior Court-Local Rules; A.R.S. §§ 12–931 and 12–932.

The Court having considered the history leading up to the enactment of the legislation being challenged and all the allegations of the plaintiffs relative to the inadequacy of the state remedy, it is the opinion of this Court that under the laws of the State of Arizona, a plain, speedy, and efficient remedy may be had by the plaintiffs in the courts of such state. Therefore, the provision of 28 U.S.C.A. § 1341 prevents this Court from assuming jurisdiction of the case.

JERTBERG, Circuit Judge, and COPPLE, District Judge, concur.

APP "A"

State of Arizona
House of Representatives
Twenty-eighth Legislature
Third Special Session

CHAPTER 6

HOUSE BILL 1

AN ACT

RELATING TO TAXATION; PROVIDING FOR THE CLASSIFICATION OF PROPERTY; PRESCRIBING THE BASIS FOR THE DETERMINATION OF ASSESSED VALUATION; PROVIDING FOR THE VALUATION OF PROPERTY AT MARKET VALUE AND THE SEPARATE VALUATION OF LAND AND IMPROVEMENTS; PROVIDING BASIS

---

30. If in their suit, the plaintiffs seek to challenge their assessment, it will not be necessary for them to join the county boards of supervisors acting in their capacities as county boards of equalization. However, it will be necessary to join the State Board of Equalization. The Arizona Court has so stated in Southern Pacific Company v. Cochise County (1963) 92 Ariz. 395, 402, 377 P.2d 770, 775:

"In view of our discussion concerning Rule 19 and the plenary power lodged in the State Board of Equalization to equalize all property assessments throughout the state, it is sufficient to say that the county boards of supervisors, acting in their capacity as County Boards of Equalization need not be joined in this action." 92 Ariz. at 402, 377 P.2d at 775.

FOR TAX ASSESSMENT ON PRODUCING OIL AND GAS INTERESTS; REPEALING SECTION 42–136, ARIZONA REVISED STATUTES; AMENDING TITLE 42, CHAPTER 1, ARTICLE 2.1, ARIZONA REVISED STATUTES, BY ADDING A NEW SECTION 42–136, AND AMENDING SECTION 42–227, ARIZONA REVISED STATUTES.

Be it enacted by the Legislature of the State of Arizona:

Section 1. Repeal

Section 42–136, Arizona Revised Statutes, is repealed.

Sec. 2. Title 42, chapter 1, article 2.-1, Arizona Revised Statutes, is amended by adding a new section 42–136, to read:

42–136. Classification of property for taxation

There are established the following classes of property for taxation:

1. Class one:

(a) Flight property valued under the provisions of sections 42–701 through 42–705.

(b) All real and personal property used in the operation of private car companies valued under the provisions of sections 42–741 through 42–748.

(c) All real and personal property of railroad companies used in the continuous operation of a railroad valued under the provisions of sections 42–761 through 42–766.

(d) Producing mines and mining claims, the personal property used thereon, the improvements thereto and the mills and smelters operated in conjunction therewith valued under the provisions of section 42–124.

(e) Standing timber.

2. Class two:

(a) All real and personal property used in the operation of telephone and telegraph companies valued under the provisions of sections 42–701 through 42–705.

(b) All property, both real and personal, of gas, water and electric utility companies and pipeline companies valued under the provisions of section 42–124.-01.

3. Class three:

All real and personal property devoted to any commercial or industrial use other than property included in classes one, two and four, including but not limited to land, the improvements thereto or any part of such land or improvements leased or rented for residential use.

4. Class four:

(a) All real property and the improvements thereto, if any, used for agricultural purposes, and all other real property and the improvements thereto, if any, not included in classes one, two and three.

(b) All personal property used for agricultural purposes, and all other personal property not included in classes one, two and three.

Sec. 3. Sec. 42–227, Arizona Revised Statutes, is amended to read:

42–227. Valuation of property at market value, separate valuation of land and improvements; basis for determination of assessed valuation

A. For property tax purposes the valuation of all taxable property shall be determined at its *market value*. The valuation of land and improvements thereon shall be determined separately. The combined valuation of all land and improvements shall not exceed the market value of the total property.

B. As a basis for determining the assessed valuation for the different classes of property specified in section 42–136, the following percentages shall apply:

1. Class one: sixty per cent of its full cash value.

2. Class two: forty per cent of its full cash value.

3. Class three: twenty-five per cent of its full cash value.

4. Class four: eighteen per cent of its full cash value.

C. The valuation determined for producing oil and gas interests valued under the provisions of section 42–124 and sections 42–227.01 through 42–227.04 shall be the assessed valuation for such property.

D. Upon preparation of the rolls, the assessor shall apply the appropriate percentage to the full cash value of all property so that the assessed valuation will be shown thereon.

Approved by the Governor—January 2, 1968.

Filed in the Office of the Secretary of State—January 2, 1968